**Ann Arden, Plaintiff-Appellee, v. Chicago Transit Authority, a Municipal Corporation, Defendant-Appellant.**

**Gen. No. 52,053.**

First District, First Division.
November 27, 1967.

George J. Schaller, O. R. Hamlink, Jerome F. Dixon, and Chester A. Wynne, of Chicago, for appellant.

Perry M. Berke, Earl Deutsch, and R. C. Sommers, of Chicago, for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

Ann Arden, plaintiff, brought this action against the Chicago Transit Authority to recover damages for personal injuries sustained by her when she fell while descending one of defendant's stairways leading to one of the platforms of defendant's elevated railway. She alleged generally that the fall resulted from the negligence of defendant in connection with the maintenance, operation and control of the stairway which was owned and maintained by the defendant. The jury returned a verdict for plaintiff in the amount of $30,000 upon which the trial judge entered judgment from which this appeal is taken. No questions are raised on the pleadings.

The issues raised on appeal are whether a verdict should have been directed in favor of defendant by the trial court at the close of all the evidence (ruling upon which was reserved by the court), and whether defendant's motion for judgment non obstante veredicto should

have been granted upon the grounds that the evidence disclosed that defendant was not guilty of negligence as a matter of law and, if it cannot prevail on this theory, the defendant contends that a new trial should be granted to it because the verdict was against the manifest weight of the evidence.

The Wabash-Madison station of the Chicago Transit Authority, where the accident in question occurred, had a mezzanine level where people would pay their fares on the way up to the train platforms. There are stairways leading from the mezzanine level to the platform level. There are two sets of tracks and platforms at this station, one on the east side and one on the west side. The Ravenswood train stops at this station. The time of day determines whether the Ravenswood train leaves from the east or west platform; only northbound trains stop at either platform. Before 6:00 p. m. or 6:15 p. m. the Ravenswood train is boarded on the east platform. After that time, passengers can only board the train on the west platform. At the time of the accident a sign had been posted by the C. T. A. pointing to the stairs leading to the east platform which said: "Ravenswood"; however, there was no indication on this sign as to the times at which the Ravenswood train could be boarded at the designated platform. When the time came for the Ravenswood train to switch from the east tracks to those on the west side of the station a gate or chain would be put up that would block the entrance to the stairs leading to the east platform.

Plaintiff testified that she would use the elevated train at Wabash and Madison about two or three times a month. On August 3, 1959, she arrived at the elevated station at around 6:00 p. m. She walked up the stairway of defendant's premises to the cashier's window on the mezzanine floor, paid her fare, and then walked up the stairs leading to the east platform in accordance with the Ravenswood "L" sign which pointed to the east platform. Plaintiff

216

testified further that after waiting about ten minutes she noticed a Ravenswood "L" going north stopping on the west platform to take on passengers. She stated: "I was kind of surprised and stood there for a moment and didn't know what to do. When I thought I'd go down and ask the cashier whether or not the els are running on the West side of the street . . . I decided to go down the stairs. As I turned toward the stairway, I was taking a step down and reaching for the rail on the left side to hold on, and I stepped on something that moved my foot." She testified that the object she slipped on was "soft" and "wet" it was like "part of a newspaper." Plaintiff further testified that as she walked up the same stairs earlier she had noticed debris on the stairs, but had paid no attention to it. She described the debris as consisting of stubs, cigarette butts, and paper. The lighting of the stairs she described as being dim and dark. The plaintiff did not remember if she was carrying a package at the time of the fall.

Blanche Vaun testified that she had seen the plaintiff on the platform before the occurrence. She heard a scream and saw the plaintiff at the bottom of the stairs lying on her back. She went down the stairs, which she said were dimly lighted, and offered to aid the plaintiff. On cross-examination she said that the plaintiff was carrying a purse. She did not recall that plaintiff had been carrying a package at the time of the accident.

Ernest Herring, a porter at the Madison-Wabash station, testified that his duties at the station were to clean stairs, sweep floors and platforms, and generally keep the station clean. He worked from 7:00 a. m. to 3:30 p. m., and another porter would not arrive at the station until about 8:30 p. m. He testified that no one attempted to clean the stairs and platform during the rush hour because there were ". . . too many people on the platform at that time. . . ." The type of debris which

217

he generally found on the stairs of the station consisted of cigarette butts, gum wrappers and things of that kind. Herring testified that he would on occasion find newspapers on the stairs, but as far as he could recall there were no newspapers on the stairs the last time he examined them at around 3:30 p. m. on the day of the accident.

An electrical engineer at Chicago Transit Authority testified that in August of 1959 the lights on the stairway in question were 36 watts. In August of 1960 a change was made from the 36-watt lamps to 56-watt lamps. The engineer testified that the purpose of the change was to provide more illumination on the stairs. William Mahoney, a retired ticket agent for the C. T. A., who was on duty as an agent at the time of the accident, testified that he went to the aid of the plaintiff after her fall. He stated that at the time of the accident the lights on the stairway were functioning, that they weren't "extra bright," but they were bright enough so that one could see the stairway. He further testified that he didn't see any debris on the stairs.

James Rogers, who was fourteen years old at the time of the occurrence, testified that as he was walking up the stairway to the ticket office on the mezzanine floor he saw the plaintiff descending the stairs from the east platform. "She had a package in her hand and as she got I'd say about a quarter of the way down the stairs, she dropped this package and she reached for it and lost her balance and fell." He further testified that he didn't see any litter on the stairs. Rogers testified that after the plaintiff fell he purchased a ticket and took a Ravenswood train northbound from the east platform of the station. He stated that the sound of the package hitting the steps was the first thing that called his attention to the presence of plaintiff.

██ The defendant claims that no "evidence was introduced at trial by the plaintiff whereby liability could be

imposed upon it as a matter of law"; and, therefore, the court erred in not directing a verdict at the close of all of the evidence, ruling upon which was reserved. "The court also erred in not granting defendant's motion for judgment notwithstanding the verdict." A trial judge applies the same standards in determining whether to grant a directed verdict as he does in deciding whether to grant a motion for judgment notwithstanding the verdict. Nutwood Drainage and Levee Dist. v. Mamer, 10 Ill2d 101, 112, 139 NE2d 247. ". . . verdicts ought to be directed and judgments n. o. v. entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." Pedrick v. Peoria & E. R. Co., 37 Ill2d 494, 229 NE2d 504.

Specifically, defendant contends that the failure of defendant to bar access to the east platform was not the proximate cause of plaintiff's injury; and, in order for the plaintiff to recover, she must show that the defendant's negligence proximately caused or contributed to the injuries sustained in the fall. It argues that its role in the misdirection of the plaintiff to the east platform at the most created a condition that provided an opportunity for other causal agencies to act, and that it cannot be responsible for injury caused by the negligent acts of third parties. The defendant contends that as a matter of law insufficient evidence was introduced by the plaintiff to show that its misdirection of plaintiff was the proximate cause of the injuries sustained in the fall.

In her complaint the plaintiff alleged that she was injured as a direct and proximate result of one or more of the following wrongful acts of the defendant; (1) that the defendant negligently maintained, operated and controlled its station and stairway; (2) the defendant permitted and allowed the stairway to be littered with debris; (3) the defendant failed to provide the stairway with sufficient

lighting under the circumstances so that the plaintiff could use the stairway with reasonable safety; (4) the defendant failed to give to the plaintiff reasonable warning that the east platform was closed for the northbound Ravenswood train and that all northbound trains would have to be boarded from the west platform; and (5) that the defendant failed to block access of passengers to the east platform by the use of gates after the hour when the northbound elevated trains switched to the west track.

It was not necessary for the plaintiff to prove each of the aforementioned charges in her complaint in order for her to hold the defendant liable for damages. Arado v. Epstein, 323 Ill App 194, 55 NE2d 561. We express no opinion as to the sufficiency of the evidence adduced by plaintiff to prove the charge that defendant's misdirecting her was the proximate cause of her injuries; this issue is not dispositive of our decision on this appeal. We point out, however, that this evidence was properly considered by the jury. Swift & Co. v. O'Brien, 127 Ill App 26. It was but a link in a connected chain of events and considered alone was not the determinative evidence on the question of proximate cause.

The determinative issue on this appeal is raised by defendant's contention that as a matter of law it was not liable for the presence of any debris on the stairs that might have accounted for the fall of the plaintiff. Defendant relies primarily upon the case of Davis v. South Side R. Co., 292 Ill 378, 127 NE 66. In that case plaintiff had disembarked from defendant's elevated railway train and while descending defendant's stairs within the station slipped on a banana peel, fell, and was injured. The Illinois Supreme Court reversed and remanded a judgment entered for plaintiff. The court held in Davis that the railroad could only be held liable for injuries brought about by refuse dropped by third parties when the railroad had actual notice or constructive notice of the

220

presence of the debris prior to the accident. The court stated that if evidence had been introduced to show that the railroad company had actual or constructive notice of the presence of the banana peel a verdict against the company might have been justified, but evidence bearing on the issue of notice was not present in the record before it.

It is our conclusion that the record presented to us for review in the instant case is dissimilar from the one presented to the Supreme Court in Davis, and, therefore, the decision of the court in that case is not controlling here. The evidence most favorable to plaintiff shows that plaintiff was misdirected by defendants to the east platform and forced to retrace her steps down defendant's stairway where the accident occurred. Plaintiff testified that she noticed debris on the stairs as she ascended them, and that her fall was brought about by her slipping on debris at the top of the stairs. She testified that the stairs were poorly lighted. This testimony was corroborated by that of Blanche Vaun. It was also corroborated by the testimony of the engineer that following the time of the accident lamps of higher wattage were installed in the stairwell to provide more illumination on the stairs.

The testimony of the porter at the station revealed that the stairway had not been cleaned since 3:30 p. m., almost three hours before the time of the accident, and that it was the standard procedure of the C. T. A. not to clean them again until approximately 8:30 p. m. The porter also testified that debris would accumulate on the station's platform and stairs, and that the debris sometimes included newspapers; a reasonable inference could be drawn from the foregoing facts that a considerable amount of debris would accumulate during the rush hour.

 Unlike the situation in Davis where no facts were presented to the jury dealing with the question of defendant's notice, the jury in the instant case might reasonably

221

have found from the facts introduced into evidence that the defendant had knowledge of the presence of debris on its east platform and stairs. The evidence most favorable to plaintiff and the inferences to be drawn therefrom does not so overwhelmingly favor defendant so as to compel us to overrule the decision of the trial court not to grant defendant's motions for a directed verdict and judgment "n. o. v."

■■ The question as to whether the debris on the platform and stairway was the proximate cause of the injury suffered by plaintiff was properly left to the jury for its consideration. The question of proximate cause is generally one of fact for the jury and is to be determined from all of the circumstances attendant upon the alleged negligent act. Merlo v. Public Service Co., 381 Ill 300, 318, 45 NE2d 665. Proximate cause only becomes a question of law when the facts are undisputed, and there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them. Philabaum v. Lake Erie & Western R. Co., 315 Ill 131, 145 NE 806.

The defendant next contends that if this court does not hold that its motion for a directed verdict and judgment "n. o. v." should have been granted by the trial judge then the cause should be reversed and remanded because the verdict was against the manifest weight of the evidence. The defendant argues that the jury had before it the positive testimony of Rogers that plaintiff's fall was brought about when she reached for a package she was carrying. Defendant argues that the testimony of Rogers was uncontradicted and unimpeached bringing the instant case within the rule stated in Urban v. Industrial Commission, 34 Ill2d 159, 214 NE2d 737, in which case the court held that positive testimony in the record which is uncontradicted and unimpeached cannot be disregarded by the trier of facts.

We cannot agree that the instant case falls within the rule announced by the court in Urban. The record does not disclose that the testimony of Rogers was uncontradicted and unimpeached. It is true that when the plaintiff was asked whether she was carrying a package at the time of her fall she answered that she didn't remember; and it is also true that she didn't take the stand to rebut the testimony of Rogers that she fell because she had dropped a package she was carrying. However, Blanche Vaun testified that as far as she could recall the plaintiff was not carrying a package.

Rogers testified that after he witnessed the plaintiff's fall he purchased a ticket and took a Ravenswood train northbound from the east platform of the station. The record shows that the plaintiff's fall occurred after all northbound trains could only be boarded at the west platform. Rogers, on direct examination, testified that he saw the plaintiff descending the stairs before she dropped the package she was carrying; on cross-examination, he testified that his attention was first called to the presence of the plaintiff when he heard the package hit the steps. Rogers testified that the plaintiff fell when she reached for a package she was carrying; plaintiff testified that she fell when she slipped on something "wet" and "soft." Rogers testified that the plaintiff slipped when she was a quarter of the way down the stairs; the plaintiff testified that she slipped on the top stair. Rogers testified that as far as he could see there was no litter on the stairs; this testimony was directly contradicted by the testimony of plaintiff. The state of the evidence in the instant case presents a far different situation from the uncontradicted positive facts that were present in Urban.

The facts and circumstances in evidence, in the instant case, may have indicated to the jury that Roger's testimony was inherently improbable. The jurors and the

223

trial judge had full opportunity to observe the witnesses while they testified and they were in a better position to weigh the testimony than a reviewing court. We cannot say that the judgment is manifestly against the weight of the evidence, and, therefore, the judgment is affirmed.

Affirmed.

MURPHY, P. J. and ADESKO, J., concur.