Louis GELSUMINO et al., Plaintiffs-Appellants, v. E. W. BLISS COMPANY, a foreign corporation, et al., Defendants-Appellees.

(No. 54627;

First District (5th Division)—March 2, 1973.

Kenneth S. Lewis, of Chicago, (Sidney Z. Karasik, Stuart N. Litwin, and Gary E. Dienstag, of counsel,) for appellants.

Caryl P. Bonotto and John M. O'Connor, Jr., both of Kirkland & Ellis, of Chicago, for appellees.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

By their amended complaint, founded on theories of negligence and strict liability, plaintiffs sued for the recovery of damages for personal injuries sustained in a punch press accident and for loss of consortium. When plaintiffs refused to settle the case at a pretrial conference, the pretrial judge instructed both defendants to file motions for summary judgment which were subsequently filed and granted. Plaintiffs now appeal, contending that the trial court erred when it granted the motions for summary judgment, because the pleadings, motions, supporting affidavits, answers and supporting counteraffidavits, depositions and exhibits disclosed that there were genuine issues of material fact to be resolved by the trier of fact. From those documents the following facts emerge:

In 1962, plaintiff's [Louis'] employer, Diebel Manufacturing Company, purchased a punch press from defendant E. W. Bliss Company, its manufacturer. The purchase order specified the inclusion of a foot switch, a standard extra cost item. This switch was supplied by defendant Allen-Bradley Company.

The machine ordered by Diebel was equipped with a two-button safety feature which made it impossible to activate the press cycle without requiring the use of both hands to depress both buttons, thereby keeping the hands of the press operator out of the die area when the press cycle started. However, if the selector switch on the press was set for foot operation, then the hand button safety feature was made inoperative.

The foot pedal consisted of a treadle with a protective metal plate across the top, but open on both sides and in the front. It could be placed anywhere on the floor within a certain radial distance from the press and was connected to the press through a cable.

On October 22, 1965, plaintiff turned on the press punch into which he placed a die. He set the selector switch to foot pedal operation, ran some parts, and took them to be inspected. After he received some advice, he lengthened the stroke of the ram and punched out a few more pieces. As he was taking these latter samples to be inspected, he stepped in some oil and slipped. As he fell, he put his hand in the die, and, at the same time, accidentally triggered the foot pedal from the side with his foot. His injuries included the loss of his right thumb and two fingers, fracture of the other two fingers of his right hand, limitation of motion of his right wrist and shoulder, and skin grafts covering two thirds of the palm of his right hand.

Count I of plaintiffs' amended complaint, based on a strict liability theory, alleged that defendant Bliss improperly designed, manufactured and equipped the punch press in that it was equipped with an unsafe foot pedal which was only partially guarded; that it was sold without proper warnings; and that the press thus presented an "unreasonably dangerous condition" which was the proximate cause of his injuries.

Count II, based on a negligence theory, alleged that defendant Bliss negligently designed, manufactured and equipped the punch press in the manner set forth in Count I; that such negligence was the proximate cause of plaintiff's injuries; and that plaintiff exercised ordinary care for his own safety in its operation.

Counts III and IV, based on strict liability and negligence, respectively, were directed toward defendant Allen-Bradley, which was alleged to have improperly or negligently designed and manufactured the foot

switch in that the switch was not sufficiently encased to prevent against accidental tripping, thus presenting an unreasonably dangerous condition which was the proximate cause of the injuries to plaintiff.

In all Counts, plaintiff Louis Gelsumino sought damages for his personal injuries, and his wife sought recovery for loss of her husband's consortium.

Both defendants denied all material allegations of the original complaint, but neither filed an answer to the amended complaint.

The cause was set for pretrial conference with the order that all discovery be completed by that date. At that conference, the judge suggested that plaintiffs accept a settlement since the Bliss press and Allen-Bradley foot pedal were in accordance with the "state of the art." When counsel for plaintiffs refused a settlement, the judge directed both defendants to file motions for summary judgment.

Defendants' separate motions and the attached supportive affidavits and exhibits both claimed in similar terms that: (1) the proximate cause of plaintiff's injury was his slipping on the oil on the floor, not any defect in the press or the pedal; (2) the foot pedal was not unreasonably dangerous or defective; and (3) the guard on the foot pedal was within the "state of the art" for foot pedal guards in 1962.

Plaintiffs filed their answers to the motions, arguing that the cause of plaintiff's injury was not his slipping and falling, but, rather, the unreasonably dangerous condition of the press and foot pedal, and that neither the press nor the pedal conformed to the "state of the art" as it existed in 1962. Plaintiffs contended that there were genuine issues as to these material facts and asked that defendants' motions for summary judgment be denied. The court, however, found that there were no such issues of fact, and that each defendant was entitled to summary judgment as a matter of law. Both defendants' motions were allowed and this appeal followed.

Under Section 57 of the Civil Practice Act (Ill. Rev. Stat. 1967, ch. 110, par. 57), a summary judgment is to be granted only where the documents to be considered show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In *American Nat. Bank & Trust Co. v. Lembessis,* 116 Ill.App.2d 5, 10, 253 N.E.2d 126, 128, the court stated:

> "The right to summary judgment is established by statute (Ill Rev Stats 1967, c 110, § 57) and the primary function of the procedure is to enable a court to determine whether there is any issue of fact to be tried by a jury. Craig v. Launer, 346 Ill App 234, 104 NE2d 830 (1952). If the pleadings, affidavits and ex-

hibits show that there is a genuine issue as to any material fact, summary judgment must not be granted. Reed v. Albanese, 78 Ill App2d 53, 223 NE2d 419 (1966)."

See also *Borgeson v. Fairhaven Christian Home,* 1 Ill.App.3d 323, 326, 272 N.E.2d 436, 438.

Plaintiffs contend that the record presents at least two genuine issues of material fact: (1) whether the press and foot pedal presented an unreasonably dangerous condition which was the proximate cause of plaintiff's injuries; and (2) whether the press and the foot pedal conformed to the state of the art existing in 1962.

■■■ The proximate cause of an injury is usually a question of fact to be determined by a jury and can only be raised as a question of law when the facts are undisputed and when there can be no difference in judgment of reasonable men as to inferences to be drawn therefrom. (*Arden v. Chicago Transit Authority,* 89 Ill.App.2d 214, 222, 232 N.E.2d 501, 506.) Even conceding defendants' point that plaintiff slipped and fell, the issue of the proximate cause of plaintiff's injury is still unresolved. Proximate cause is essentially a question of foreseeability, and, for plaintiff to recover, his injury must be the natural and probable result of a negligent act and be of such a nature that an ordinarily prudent person should have foreseen as likely to result. (*Donehue v. Duvall,* 41 Ill.2d 377, 379, 243 N.E.2d 222, 223.) In the instant case, it should have been for the jury to decide whether it was foreseeable to either defendant that the foot pedal might be accidentally triggered from the side, as it was, and so cause injury to the press operator.

On the basis of the various documents filed by defendants, they contend that the foot pedal was not unreasonably dangerous because its design conformed to the "state of the art" as it existed at the time of its design and manufacture. Plaintiffs question whether defendants actually showed conformity to the state of the art, but we do not resolve that issue since we find that the "state of the art" defense is irrelevant with respect to the two strict liability counts and inconclusive with respect to the two negligence counts.

In *Cunningham v. MacNeal Memorial Hosp.,* 47 Ill.2d 443, 266 N.E.2d 897, the pleadings disclosed that plaintiff contracted serum hepatitis from the blood supplied to her by defendant-hospital and then sued for damages, contending that the blood supplied was in an unreasonably dangerous condition at the time it left the hands of defendant. Defendant answered that the state of medical science was such that there was absolutely no means by which the existence of serum hepatitis virus could be detected in whole blood, and that it should not be held strictly

liable for any injury caused thereby. The court stated that whether or not defendant could, even theoretically, ascertain the existence of serum hepatitis virus in whole blood would be of no moment, and that a ruling in defendant's favor on this issue would be inconsistent with the concept of strict liability. The court explained at p. 453:

> "To allow a defense to strict liability on the ground that there is no way, either practical or theoretical, for a defendant to ascertain the existence of impurities in his product would be to emasculate the doctrine and in a very real sense would signal a return to a negligence theory."

The test, then, for imposing strict liability, is whether the product was unreasonably dangerous despite the fact that the seller exercised all possible care in the preparation and sale of his product. American Law Institute's Restatement of Torts, 2d Edition, Sec. 402A.

██  When the *Cunningham* court held the defendant hospital liable on a strict liability theory, even though there were documents allegedly showing that it had done everything possible to make its product safe, the court, in effect, ruled that a "state of the art" defense was inapplicable in a strict liability case. Therefore, neither can defendants in the instant case avoid the issue of strict liabilty by attempting to show merely that they had done what the rest of their industry had done to make their products safe. This conclusion is not to be interpreted as our belief that the foot pedal was, in fact, unreasonably dangerous, that being, in our opinion, a genuine, material issue of fact in this  case. But we do say that conformity to the state of the art is not a defense to a claim involving an unreasonably dangerous product.

██  As to the negligence counts also, conformity to the state of the art is not conclusive of non-negligence since it is merely to be considered by the jury along with whatever other evidence may be presented in determining that fact. See *Moren v. Samuel M. Langston Co.*, 96 Ill. App.2d 133, 145-146, 237 N.E.2d 759, 765, where the court stated that "Custom is relevant in determining the standard of care because it illustrates what is feasible, it suggests a body of knowledge of which the defendant should be aware, and it warns of the possibility of far-reaching consequences if a higher standard is required. * * * But custom should never be conclusive." The court went on to quote Judge Learned Hand when he stated in *The T. J. Hopper*, 60 F.2d 737, 740:

> "Indeed in most cases reasonable prudence is in fact common prudence; but strictly it is never its measure; a whole calling may have unduly lagged in the adoption of new and available devices. It never may set its own tests, however persuasive be its usages.

Courts must in the end say what is required; there are precautions so imperative that even their universal disregard will not excuse their omission."

See also *Rivera v. Rockford Machine & Tool Co.*, 1 Ill.App.3d 641, 274 N.E.2d 828.

Accordingly, we conclude that the trial court erred in granting the motions for summary judgment.

The judgment of the trial court is reversed and the cause is remanded with directions to proceed as though defendants' motions for summary judgment had been denied.

Reversed and remanded with directions.

DRUCKER, P. J., and LORENZ, J., concur.