Gary OLSON and Bonnie Kay Olson, Plaintiffs and Appellees,

v.

A. W. CHESTERTON COMPANY, a Foreign Corporation, Defendant and Appellant.

Civ. No. 9288.

Supreme Court of North Dakota.

July 27, 1977.

Rehearing Denied Aug. 18, 1977.

Degnan, McElroy, Lamb, Camrud, Maddock & Olson, Grand Forks, for defendant and appellant; argued by James L. Lamb, Grand Forks.

O'Grady & Anderson, Grand Forks, for plaintiffs and appellees.

Ralph S. Oliver, Larimore, for plaintiffs and appellees.

Davies, Pearson, Anderson, Seinfeld, Gadbow, Hayes & Johnson, Tacoma, Wash., for plaintiffs and appellees; argued by Alvin A. Anderson and Edward S. Winskill, Tacoma, Wash.

PEDERSON, Justice.

This is an appeal by the defendant, A. W. Chesterton Company, from an order of the district court of Grand Forks County denying its motion for judgment notwithstanding the verdict or in the alternative for a new trial. Judgment upon a jury verdict was entered against Chesterton in the amount of $400,000 for injuries sustained by the plaintiff, Gary Olson, who lost his left arm, clavicle, scapula, and associated shoulder joint structures while applying the defendant's belt dressing product to the pinch point between the conveyor belt and power pulley of a conveyor belt system owned and operated by his employer, Northern Improvement Company. The action was tried on the theory of strict liability in tort. We affirm.

In the spring of 1970 Gary Olson was employed as an electrician at Northern Improvement Company's batch plant, then located near the city of Grand Forks, North Dakota. His assigned duties included operation and maintenance of the 120-foot long, 30-inch wide, 22-degree upwardly inclined, top driven sand conveyor belt used to load sand into a concrete mixing hopper. At the time of the accident Northern Improvement Company was engaged in an airport runway construction project, and Olson's testimony at trial indicates that he performed his job under some pressure and with the knowledge that, if the conveyor system malfunctioned and the plant had to be shut down, he might lose his job.

On the day of the accident, August 4, 1970, the conveyor belt began slipping, and Olson's initial corrective measure was to shovel sand off the belt to lighten the load. When the belt began slipping a few minutes later, Olson tightened the slack adjusters on the conveyor system, which tightened the belt around the pulleys. When this also proved ineffective, Olson procured a can of belt dressing, Chesterton's Belt Flo Jr., read the directions, which stated in relevant part:

"Easy to use. Apply *only* to running belts. Pour slowly through applicator spout until entire surface wetted * * *,"

and climbed up the conveyor system to the top-drive pulley where he applied the product by squirting it directly on the power pulley, getting satisfactory results.

When the belt began to slip again, and subsequently stalled completely, Olson found it necessary to repeat the process a second time, again with satisfactory results, and then a third time. Olson testified that it was on the third application of the belt dressing that he felt there might have been

a flap or protrusion from the belt which pushed his hand into the pinch point, resulting in the serious injuries sustained.

After the jury returned a verdict in favor of Olson in the amount of $400,000, Chesterton moved for judgment notwithstanding the verdict or in the alternative for a new trial. Chesterton now poses eighteen assignments of error, based upon the denial of its motions, as the issues in this appeal.

## I.

## MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

This Court expressly adopted the rule of strict liability in tort as set forth in Restatement, Second, Torts, § 402A, in *Johnson v. American Motors Corporation*, 225 N.W.2d 57 (N.D.1974). In this appeal, Chesterton argues that it is not strictly liable in tort in this action under the Restatement formulation, and assigns three errors as matters of law in the trial court's denial of its motion for judgment notwithstanding the verdict when the court failed to find that: (1) the product was misused by Olson; (2) the obviousness of the danger obviated the need for express warning and thus the product was not in a defective and unreasonably dangerous condition; (3) the defense of assumption of risk precluded Olson's recovery.

In acting upon a motion for judgment notwithstanding the verdict, the court must apply the test stated in *Nokota Feeds, Inc. v. State Bank of Lakota*, 210 N.W.2d 182, 187 (N.D.1973):

"When ruling on a motion for a directed verdict or for judgment notwithstanding the verdict, the court must decide whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, reasonable men could reach but one conclusion as to the verdict, or, otherwise stated, whether the evidence, viewed most favorably to the party against whom the motion is made, and

giving that party the benefit of all reasonable inferences from the evidence, compels a result with which no reasonable person might differ."

Accord, *Riebe v. Riebe*, 252 N.W.2d 175 (N.D.1977); *Dehn v. Otter Tail Power Co.*, 251 N.W.2d 404 (N.D.1977).

## A. MISUSE OF THE PRODUCT.

Comment h to § 402A, Restatement, Second, Torts, indicates that the seller's liability is restricted when its product is misused or used in an abnormal manner:

"h. A product is not in a defective condition when it is safe for normal handling and consumption. If the injury results from abnormal handling, as where a bottled beverage is knocked against a radiator to remove the cap, or from abnormal preparation for use, as where too much salt is added to food, or from abnormal consumption, as where a child eats too much candy and is made ill, the seller is not liable. Where, however, he has *reason to anticipate* that danger may result from a particular use, as where a drug is sold which is safe only in limited doses, he may be required to give adequate warning of the danger (see Comment j), and a product sold without such warning is in a defective condition." [Emphasis added.] [1]

Chesterton's product, Belt Flo Jr. belt dressing, contained this warning on the back of the container:

"Easy to use. Apply only to *running* belts. Pour *slowly* through applicator spout until entire belt surface wetted. Should belt show tendency to slip off pulley, it indicates too fast application. After thorough saturation, occasional use maintains maximum efficiency."

Olson testified that the third occasion on which he found himself at the top of the conveyor system attempting to repair a recurring malfunction, the belt was completely stalled and, in an effort to get it moving, he again applied the belt dressing by squirt-

1. Compare other applications of the doctrine of reasonable anticipation in other circumstances, as discussed in *Mills v. Agrichemical Aviation, Inc.*, 250 N.W.2d 663 (N.D.1977).

ing it on the top-drive pulley revolving inside the belt. Chesterton notes that the instructions explicitly require application by pouring slowly over a running belt, and argues that Olson's method of application constitutes an abnormal use or misuse of the product, relieving it of liability.

■ It is now well-settled that one who manufactures or sells a product has a duty not only to warn of dangers inherent in its intended use, but also to warn of dangers involved in a use which can be reasonably anticipated. 1 Frumer and Friedman, Products Liability, § 15.01 (1976); 63 Am. Jur.2d, Products Liability, § 136 (1972). We have recognized this dual responsibility of sellers in products liability cases based on negligence, *Seibel v. Symons Corporation,* 221 N.W.2d 50 (N.D.1974), and on strict liability in tort, *Johnson v. American Motors Corporation,* 225 N.W.2d 57 (N.D.1974). In that latter decision, we quoted the following language from the California Court of Appeals in *Thomas v. General Motors Corporation,* 13 Cal.App.3d 81, 91 Cal.Rptr. 301, 306 (1970):

> "Although it is incumbent on a plaintiff seeking to impose strict liability to establish that he was injured while using the product in a way it was intended to be used * * * a manufacturer may be held liable where the misuse by the customer was reasonably foreseeable."

*Accord, Higgins v. Paul Hardeman, Inc.,* 457 S.W.2d 943 (Mo.App.1970).

■ Whether the use or misuse of the product by the plaintiff was reasonably foreseeable is ultimately a jury question. *Johnson v. American Motors Corporation, supra; Dunham v. Vaughan & Bushnell Mfg. Co.,* 86 Ill.App.2d 315, 229 N.E.2d 684 (1967). See *Pust v. Union Supply Co.,* 561 P.2d 355 (Colo.App.1977), *cert. granted* Mar. 14, 1977.

■ We think the jury would be justified in concluding that Olson's use or misuse of the product was foreseeable. In fact, the jury could properly determine that application of the belt dressing to a moving pulley in a stalled belt situation was not only foreseeable but the only effective use of the product under the circumstances. When a manufacturer places upon the market a product designed to end belt slippage, it must reasonably foresee that an ultimate consumer would not discontinue use of the product simply because the belt slippage has deteriorated into total belt stoppage. In the latter situation, where the belt has become motionless, use of the product in the manner here applied was clearly foreseeable. In addition, the container was designed with a squirt-type nozzle, inviting use of methods other than pouring slowly.

### B. THE OBVIOUSNESS OF THE DANGER.

The issue with respect to the defectiveness of the product in this action involves not the belt dressing or the container in which it rests, but the label on the container and the adequacy of that label to warn of potential danger. Comment j to § 402A of the Restatement indicates that inadequacy of directions or warnings may render the product unreasonably dangerous. Chesterton relies on another portion of that comment to relieve it of liability:

> "But a seller is not required to warn with respect to products, or ingredients in them, which are only dangerous, or potentially so, when consumed in excessive quantity, or over a long period of time, when the danger, or potentiality of danger, is generally known and recognized."

In the strict liability context of this case, Chesterton employs this "obvious danger" rule in a dual capacity: (1) to negate any defect in its product since obvious danger requires no warning, and (2) to establish its assumption-of-risk defense. We limit our discussion for the moment to the former argument.

The "obvious or patent danger" rule has traditionally been recognized in negligence cases to relieve the seller of his duty to warn the consumer of dangers so obvious that no warning is deemed necessary. A typical statement of the rule appears in *Campo v. Scofield,* 301 N.Y. 468, 95 N.E.2d 802, 804 (1950), in which the court said:

"If a manufacturer does everything necessary to make the machine function properly for the purpose for which it is designed, if the machine is without any latent defect, and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law's demands. We have not yet reached the state where a manufacturer is under the duty of making a machine accident proof or foolproof."

*Campo* has recently been rejected by the New York Court of Appeals in another products liability case based upon negligence in *Micallef v. Miehle Co., etc., Inc.,* 39 N.Y.2d 376, 384 N.Y.S.2d 115, 120, 348 N.E.2d 571, 577 (1976):

"*Campo* suffers from its rigidity in precluding recovery whenever it is demonstrated that the defect was patent. Its unwavering view produces harsh results in view of the difficulties in our mechanized way of life to fully perceive the scope of danger, which may ultimately be found by a court to be apparent in manufactured goods as a matter of law. * * * Apace with advanced technology, a relaxation of the *Campo* stringency is advisable. A casting of increased responsibility upon the manufacturer, who stands in a superior position to recognize and cure defects, for improper conduct in the placement of finished products into the channels of commerce furthers the public interest."

In *Palmer v. Massey—Ferguson, Inc.,* 3 Wash.App. 508, 476 P.2d 713, 718–719 (1970), a negligence action to recover from the manufacturer of a hay baler for failure to provide a protective device to prevent injury, the Washington Appellate Court also rejected the obvious danger rule:

"It seems to us that a rule which excludes the manufacturer from liability if the defect in the design of his product is patent but applies the duty if such a defect is latent is somewhat anomalous.

The manufacturer of the obviously defective product ought not to escape because the product was obviously a bad one. The law, we think, ought to discourage misdesign rather than encouraging it in its obvious form."

We have taken a similar position in an action based upon negligence in which a store patron was injured when she slipped on ice at the entrance of the store, in *Johanson v. Nash Finch Company,* 216 N.W.2d 271 (N.D.1974), where we held that the duty of the store owner to maintain the premises in a reasonably safe condition is not entirely dependent upon whether the danger is latent or patent, concealed or obvious.

Several authorities have questioned the legitimacy and continued vitality of the "obvious danger" rule in the strict products liability area when it is being eroded in the negligence area.[2]  *Thompson v. Package Machinery Company,* 22 Cal.App.3d 188, 99 Cal.Rptr. 281 (1972); 2 Frumer and Friedman, Products Liability, § 16A[5] (1976).

The California Supreme Court has stated the relevant underlying policies succinctly in *Luque v. McLean,* 8 Cal.3d 136, 104 Cal. Rptr. 443, 449, 501 P.2d 1163, 1169 (1972):

"Furthermore, the policy underlying the doctrine of strict liability compels the conclusion that recovery should not be limited to cases involving latent defects. 'The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves.' * * * It would indeed be anomalous to allow a plaintiff to prove that a manufacturer was negligent in marketing an obviously defective product, but to preclude him from establishing the manufacturer's strict liability for doing the same thing. The result would be to immunize from strict liability manufacturers who callously ignore patent

**2.** See Marschall, *An Obvious Wrong Does Not Make A Right: Manufacturers' Liability For Patently Dangerous Products,* 48 N.Y.U.L.Rev. 1065–1114 (Dec. 1973), in which the author argues that the latent-defect doctrine has no place in an action based upon strict liability in tort.

dangers in their products while subjecting to such liability those who innocently market products with latent defects."

In holding that the obviousness of the danger does not "ipso facto" preclude recovery based on strict liability in tort, the federal district court in *Dorsey v. Yoder Company,* 331 F.Supp. 753, 759 (E.D.Pa. 1971), stated:

"It does not follow from this holding that the manufacturer of every obviously defective or dangerous product owes an automatic duty to an injured party. Although a knife qualifies as an obviously dangerous instrumentality, a manufacturer need not guard against the danger that it presents. '[Nor is it] necessary to tell a zookeeper to keep his head out of the hippopotamus' mouth.' * * * The point is that to preclude absurd results the obviousness of the danger must constitute but *one* of the factors that determines whether the danger is unreasonable." [3]

Accord, *Byrns v. Riddell, Incorporated,* 113 Ariz. 264, 550 P.2d 1065 (1976). See *Pust v. Union Supply Co., supra.*

■ We find the rationale of these cases compelling. There is no valid reason for automatic preclusion of liability based solely upon "obviousness" of danger in an action founded upon the risk-spreading concept of strict liability in tort which is intended to burden the manufacturers of defectively dangerous products with special responsibilities and potential financial liabilities for accidental injuries. Comment c, § 402A, Restatement, Second, Torts. In this instance, the testimony of Olson's expert witness, Dr. Gordon H. Robinson, indi-

cated that the belt dressing container was an inappropriate applicator of the product in a top-drive belt situation, that the label on the container should have warned of the serious dangers inherent in running conveyor belts generally, and should have advised the consumer to use an aerosol or squirt spray applicator with a top-drive, power pulley system. The positive assertions on the label of the product's effectiveness, in combination with the absence of warnings of potential dangers, led Dr. Robinson to conclude that the label was deficient and the product defective. We do not agree with Chesterton's contention that since the dangers inherent in a conveyor belt system are obvious to everyone, no warning of potential danger need be placed on a product designed to be used in conjunction with that system, and it was not error for the trial court to refuse to rule as a matter of law that the product was not in a defective condition unreasonably dangerous to the user.

### C. ASSUMPTION OF RISK.

Comment n to § 402A, Restatement, Second, Torts, provides that:

" * * * the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability."

■ Chesterton contends, properly, that obviousness of the risk is an important factor in determining whether Olson assumed a risk knowingly and voluntarily. In *Wentz · v. Deseth,* 221 N.W.2d 101 (N.D.

---

**3.** The court went on to suggest some of the factors which determine whether the danger is unreasonable: "And in measuring the likelihood of harm one may consider the obviousness of the defect since it is reasonable to assume that the user of an obviously defective product will exercise special care in its operation, and consequently the *likelihood* of harm diminishes.

"In a persuasive article, Dean Wade has enumerated the specific factors that enter into the final balance as follows:

'(1) the usefulness and desirability of the product, (2) the availability of other and safer products to meet the same need, (3) the likelihood of injury and its probable seriousness, (4) the obviousness of the danger, (5) common knowledge and normal public expectation of the danger (particularly for established products), (6) the avoidability of injury by care in use of the product (including the effect of instructions or warnings), and (7) the ability to eliminate the danger without seriously impairing the usefulness of the product or making it unduly expensive.'" 331 F.Supp. at 760.

1974), we identified the elements of the assumption-of-risk defense as knowledge of abnormal danger, voluntary exposure to it, freedom of choice to avoid it, and injury proximately caused by the abnormal danger. While we do not believe the obviousness of the danger should automatically preclude a finding that the product is in a defective and unreasonably dangerous condition, it may be a significant factor in the assumption-of-risk defense.

The determination of whether the plaintiff assumed the risk is a question of fact. *Johnson v. American Motors Corporation, supra; Williams v. Brown Manufacturing Company*, 45 Ill.2d 418, 261 N.E.2d 305 (1970). The principal elements of the defense are knowledge of the danger and voluntary and unreasonable exposure. Obviousness of the danger, objectively determined, may suggest that a particular plaintiff subjectively assumed the risk of that danger, but that conclusion is not inevitable.

There is substantial evidence in the record that the danger inherent in conveyor belt systems and the danger involved in applying belt dressing to those systems were not "obvious" to Olson at the time the injury occurred. Dr. Gordon Robinson, qualified as an expert in electrical and mechanical engineering, psychology, and human factors engineering (man-machine interactions), testified that while Olson recognized the potential dangers of working around conveyor belts in his "long-term memory," the obviousness of the danger may have been absent in his "short-term memory," especially when he was occupied with the particular task of getting the belt moving and subject to pressure and stress.

While Olson testified that he realized the potential danger of moving machinery, in response to a question as to whether he knew that it was dangerous to put his hand so close to the head pulley, he also testified that:

> "It just looked to me like it was traveling so slow that I didn't, it didn't register that it was real dangerous."

There is substantial evidence in the record to justify a factual determination that the obviousness of the particular danger confronting Olson was not appreciated by him. One cannot voluntarily expose himself to a danger of which he has no knowledge. Section 496D, Restatement, Second, Torts. Similarly, whether Olson proceeded unreasonably to encounter a known danger is a jury question, the determination of which we cannot say lacks substantial evidentiary support.

From an examination of the entire record, we believe that the evidence does not compel a result with which no reasonable person might differ. There was substantial evidence upon which the jury could conclude that the product was defective, and that the plaintiff did not misuse the product or assume the risk of encountering a known danger, and the trial court properly denied defendant's motion for judgment notwithstanding the verdict.

## II.

### MOTION FOR A NEW TRIAL

In our consideration of the remaining fifteen issues or assignments of error by the trial court in its denial of Chesterton's motion for a new trial, we apply the standard enunciated in *Stee v. "L" Monte Industries, Inc.*, 247 N.W.2d 641 (N.D.1976), that the order denying a new trial will not be overturned unless it is clear that there was a manifest abuse of discretion.

Chesterton first assigns as error the trial court's refusal to exclude the testimony of appellee's expert witness, Dr. Gordon H. Robinson, on the ground that Chesterton was not notified of Robinson's existence or the substance of his testimony until the day of trial when appellant was served with a supplemental response to an interrogatory posed to Olson by defendant, Grand Forks Supply Corporation (who was later dismissed from the action). Although Dr. Robinson was employed by Olson one week prior to trial, Grand Forks Supply Corporation had orally agreed to an extension of time in which Olson could file his

supplemental response pertaining to that expert witness, an agreement of which Chesterton had no knowledge.

Although Chesterton did not propound the interrogatory, it argues that Rule 5, NDRCivP, requiring service of every paper relating to discovery on each of the parties to the action, and Rule 26(e), NDRCivP, requiring supplementation of responses relating to expert witnesses, support its contention that any stipulation to extend the time for answering was invalid without its knowledge and approval.

The trial court ruled that since Chesterton had not posed the interrogatory, it had no standing to object to the late notice. We find no express language in the Rules of Civil Procedure relating to discovery which contradicts the court's ruling. However, we must agree with appellant that the spirit and intent of the Rules to eliminate surprise at trial would be better served if each party to the action entitled to be served with all papers relating to discovery, actually participates in any informal agreements or oral stipulations.

It has been suggested that since failure to supplement a response is not listed in Rule 37, NDRCivP, as a type of misconduct for which sanctions are available, the court must rely on its inherent powers to impose such sanctions as it deems desirable in its wide discretion. Wright & Miller, Federal Practice and Procedure: Civil § 2050 (1970). We do not think a decision to permit Dr. Robinson to testify would constitute an abuse of discretion even if the trial court had concluded that Chesterton did have standing to object. Considering the nature of the lawsuit, the earlier indication by Olson that expert witnesses would be employed, the distances traveled by other witnesses and counsel, and the need to avoid further delay, the court was justified in denying a continuance and refusing to exclude Dr. Robinson's testimony. In finding no prejudicial error, we note that later in the trial the court denied a similar request by Olson to exclude testimony of Chesterton's expert witnesses or to delay trial for the purpose of taking their depositions.

■■■ Chesterton also contends that the trial court erred in admitting the testimony of Dr. Robinson because he was not properly qualified as an expert. The trial court apparently found that Dr. Robinson had the requisite qualifications in the areas relevant to the lawsuit: training in psychology (short-term and long-term memory), mechanical engineering, human factors engineering (man-machine relationships), and knowledge of the use of warning signs or systems in heavy industry. The determination of whether specialized testimony will assist the trier of fact in understanding the evidence rests within the discretion of the trial court, *Stein v. Ohlhauser*, 211 N.W.2d 737 (N.D.1973), and no abuse of discretion will be found, when, as here, the court's determination is supported by the record. *Holecek v. Janke*, 171 N.W.2d 94 (N.D. 1969).

■■■ Error is charged in the trial court's refusal to strike portions of Dr. Robinson's opinion given in response to a hypothetical question which Chesterton argues was premised upon assumed facts which were never placed in evidence. We find all of the assumed facts upon which the hypothetical question was based to have substantial support in the record. The only marginal fact in the hypothetical relates to the assumed movement of the belt at the time Olson applied the belt dressing to the pulley. We are satisfied that if the belt was initially stalled, subsequent events attest to the fact that Chesterton's product effectively (and tragically) produced the desired result sometime during application. Olson's testimony that a flap or protrusion from the belt pushed his hand into the pinch point of the conveyor represents sufficient evidence to indicate that the belt began moving prior to Olson's injury.

■■■ Chesterton also requests a new trial on the ground that the jury awarded excessive damages under the influence of passion or prejudice. Rule 59(b)(5), NDRCivP. This argument is without substance. Olson's unusually severe injuries and his adequately demonstrated impaired

ability preclude this court from disturbing the considered opinion of the trial jury. *Seibel v. Symons Corporation*, 221 N.W.2d 50 (N.D.1974); *Skjonsby v. Ness*, 221 N.W.2d 70 (N.D.1974). In the absence of any specific indication in the record that the jury was influenced by passion or prejudice, we cannot say that the trial court abused its discretion in denying a new trial on this ground. *Dehn v. Otter Tail Power Co.*, 251 N.W.2d 404 (N.D.1977).

Chesterton also assigns as error the court's refusal to admit offered evidence on the state of the art in the belt dressing industry. There appears to be a difference of opinion as to the admissibility of state-of-the-art evidence in strict liability cases. *Bruce v. Martin-Marietta Corp.*, 544 F.2d 442 (10th Cir. 1976) (admissible); *Gelsumino v. E. W. Bliss Company*, 10 Ill.App.3d 604, 295 N.E.2d 110 (1973) (inadmissible).

Chesterton made an offer of proof that its state-of-the-art evidence would show that of six products similar to defendant's belt dressing which were marketed in the Midwest, none contained additional warnings to those provided on Chesterton's product. Olson then offered several other products of the same nature to show that different and additional warnings were utilized by other manufacturers.

All of this evidence might be relevant to the issue of negligence. While Chesterton suggests, by citation to § 388, Restatement, Second, Torts, that there is little distinction between the burden of proof in a negligence action and one based upon inadequacy of warning in strict liability in tort, we think the distinction is significant and should be preserved. In actions based upon strict liability in tort, the focal issue is the condition of the product, not the conduct of the defendant. *Jackson v. Coast Paint and Lacquer Company*, 499 F.2d 809 (9th Cir. 1974). The trial court could properly conclude that the probative value of

the state-of-the-art evidence, as offered on the issue of the condition of the product, was negligible. Recognizing that even in actions based on negligence, state-of-the-art evidence is not conclusive, we think such evidence in actions predicated upon strict liability possesses even less probative value, and under the particular facts of this case exclusion of that evidence by the trial court was not an abuse of discretion and does not constitute prejudicial or reversible error.[4]

Two additional assignments of error concern matters entirely within the discretion of the trial court. We find no abuse of that discretion in the trial court's decision to refuse Chesterton permission to demonstrate an alternative method by which the product might be used, *Larson v. Meyer*, 135 N.W.2d 145 (N.D.1965), or to refuse to submit the case to the jury on special interrogatories as requested by defendant. *North American Pump Corp. v. Clay Equipment Corp.*, 199 N.W.2d 888 (N.D.1972); Rule 49(a), NDRCivP.

Chesterton alleges error by the trial court in admitting or refusing to admit testimony of several of the witnesses at trial. Although we find no merit in these arguments and no prejudicial error, we deem it necessary to comment briefly on the trial court's exclusion of substantial portions of the testimony of three of Chesterton's expert witnesses, Dr. Arnold F. Kanarich, Dr. Mary Crawford Potter, and Mr. James W. Bruns.

From the record it is apparent that those expert qualifications minimally acceptable to the trial court included education in the areas of psychology, human factors and mechanical engineering, experience in the area of warning signs or systems, and knowledge of heavy equipment or conveyor belt systems on or around which warnings are customarily placed. Upon examination by Olson's counsel for the purpose of establishing a basis for an objection as to foundation, Dr. Kanarich admitted that he had no train-

---

**4.** In 1932 Learned Hand said that there may be cases which say that the general practice of the calling sets the proper standard of diligence but "strictly it is never its measure; a whole calling may have unduly lagged." The T. J. Hooper, 60 F.2d 737, 740 (2nd Cir. 1932). The Illinois Appellate Court said in *Gelsumino v. E. W. Bliss Company*, 10 Ill.App.3d 604, 295 N.E.2d 110 (1973), that conformity to state of the art is not a defense to strict liability claims.

ing in engineering and lacked experience with gravel conveyors and with warning signs on heavy machinery. With respect to Dr. Kanarich, the trial court concluded: "He hasn't—he has admitted that he has had no experience with warning signs * * * I don't think that at present you have qualified him sufficient to give an opinion as to the instructions or warnings or lack of warnings on Exhibit 45."

As to the qualifications of Dr. Potter, the record indicates that although she apparently had experience in the field of signs, when asked whether she considered herself an expert in industrial signing (as to where signs should be placed on machinery), she testified: "* * * I don't want to say a flat no but I guess if I am forced to answer, I'd have to say no." Dr. Potter also testified that she had no engineering background and no experience with industry and industrial production.

Mr. Bruns did not possess an engineering degree. Although he testified that he had attended two universities, his education consisted mainly of architectural engineering and drafting courses, and his testimony indicates that during this period of his formal education he took only one course in mechanical engineering. In ruling upon Mr. Bruns' qualifications, the trial court stated: "Well, I don't feel that he has shown himself to be sufficiently qualified to make the, give the testimony that you have indicated that if he'd be called, he would give."

■ While we are cognizant of the potential effect on the jury of admitting the testimony of plaintiff's expert witness while limiting significantly the testimony of three of defendant's expert witnesses, and thus have closely examined the record as it pertains to this issue of foundation, we cannot conclude that the trial court abused its discretion with respect to any of these rulings. *Stein v. Ohlhauser, supra.*

Chesterton's allegations of error by the trial court in its handling of the deadlocked jury and misconduct by the court during trial are unsupported by the record and without merit.

■ Finally, Chesterton argues that the court erred in giving two instructions to the jury. The first alleged improper instruction objected to by Chesterton instructed the jury as follows:

"The doctrine of assumption of risk does not apply and will not bar the claim of the Plaintiff if you find that any risk assumed by Plaintiff Gary Olson was induced by the packaging and labeling of the product."

We cannot agree with appellant that the effect of this instruction was to deprive it of the defense of assumption of risk. It was not error to properly inform the jury that if the label on the product inadequately warned of potential danger or actually induced or generated a false sense of safety and security, this would serve to refute essential elements of the assumption of risk defense, knowledge and appreciation of the danger, and voluntary exposure to it.

■ The second alleged improper instruction was taken verbatim from § 402B, Restatement, Second, Torts, and concerns the imposition of strict liability in tort for physical harm caused by a misrepresentation of material fact with respect to character or quality of a chattel upon which the consumer justifiably relies. The substance of the representations, directions and warnings on the belt dressing container provide minimal support for the inclusion of § 402B in the instructions and, in view of the fact that the rest of the instructions fairly and correctly outline the issues, we cannot consider this arguably irrelevant instruction prejudicial in this instance. *Welken v. Conley,* 252 N.W.2d 311 (N.D.1977).

We find no merit in appellant's remaining arguments on the issues presented. We have discussed most of appellant's assignments of error individually and in some detail because of the extensive record involved and the complex factual and legal questions presented. For the reasons stated herein, we are satisfied that the trial court did not commit error or abuse its discretion, and the order of the court denying appellant's motion for judgment not-

withstanding the verdict or in the alternative for a new trial is affirmed.

ERICKSTAD, C. J., and PAULSON, SAND and VOGEL, JJ., concur.