LOWELL FRIEDRICH, APPELLANT, v. MEDILL ANDERSON ET AL., APPELLEES.

217 N. W. 2d 831

Filed May 2, 1974. No. 39050.

William M. Lamson, Jr., and Robert F. Craig of Kennedy, Holland, DeLacy & Svoboda, and Patrick Rogers of Rogers & Rogers, for appellant.

Deutsch & Hagen, for appellees Anderson et al.

L. J. Tierney and Theodore J. Stouffer of Cassem, Tierney, Adams & Henatsch, for appellees Chrysler Corp. et al.

Heard before SPENCER, SMITH, and CLINTON, JJ., and BRODKEY and HASTINGS, District Judges.

HASTINGS, District Judge.

The question here involves the correctness of the action of the trial court in sustaining the motions for summary judgment of the defendants Chrysler Corporation and Chrysler Motors Corporation, the manufacturer and distributor, respectively, of a certain 1966 Plymouth automobile owned by plaintiff at the time of the accident in question.

Plaintiff was a passenger in his automobile being driven by his wife, when it was struck from the left side by another automobile, throwing him forward and to the left so that his head struck the gearshift lever knob when it was in the low position. He alleged in his second amended petition that the knob was defectively designed, that the "second impact" caused specific injuries to his eye, and that the defendants were liable on the theories of specific negligence, breach of warranty, and strict liability.

Defendants denied all allegations of negligence on their part, although for the purpose of the motions, stipulated with plaintiff that there would be some evidence from which it could be concluded that the knob was defectively designed. In addition, it must be conceded for the same purpose that some of plaintiff's injuries resulted from his eye being in collision with and penetrated by the knob.

The only other facts appeared from depositions of two engineers in the employment of the defendants. Essentially, one could conclude from their testimony that the gearshift lever knob in use at the time plaintiff's auto was built, was approximately ½ inch in diameter; that half way through the 1966 model year the size of the knob was increased to approximately 1 inch in diameter to conform to G. S. A. standards which merely relate

to specifications required of automobiles purchased by the United States government; that there were no official federal standards then or at any time since relating to size or design of such knobs; that the larger the flat surface of the end of the knob, assuming a head-on impact with it rather than one at an angle, the less would be the force of impact per unit of area; that the size and shape of the knob must be counter-balanced against the utility of its use for the purpose intended; and that no records of any injury from gear shift knobs on Chrysler products other than this one were within the records of the defendants or knowledge of these witnesses.

The trial court in sustaining defendants' motions and granting summary judgment in their favor found that "it is conclusively established there was no duty on the part of said defendants at the time of manufacture and sale to design a gear shift lever knob so as to be incapable of producing the injury to this plaintiff or incapable of causing injury in the event of collision with another vehicle."

As stated in Green v. Village of Terrytown, 189 Neb. 615, 204 N. W. 2d 152: "The moving party is not entitled to summary judgment except where there exists no genuine issue as to any material fact in the case and where under the facts he is entitled to judgment as a matter of law. . . . The burden is upon the party moving for the summary judgment to show that no issue of fact exists, and unless he can conclusively do so, the motion must be overruled. . . . Upon a motion for summary judgment the court examines the evidence, not to decide any issue of fact, but to discover if any real issue of fact exists. . . . In considering a motion for summary judgment the court views the evidence in the light most favorable to the party against whom it is directed, giving to that party the benefit of all favorable inferences that may reasonably be drawn therefrom."

Assuming the facts established as set forth above, the

precise question before us is the nature or extent of the duty which an automobile manufacturer owes to the users of its products in the event of injury or enhanced injury resulting from a "second impact" or collision of a passenger with the inside of an automobile following an initial external collision. This is a case of first impression in Nebraska. There are two distinct theories, each strenuously urged by the respective parties. Each finds its champion in a federal case, Evans v. General Motors Corp., 359 F. 2d 822 (7th Cir., 1966), supporting defendant's position, and Larsen v. General Motors Corp., 391 F. 2d 495 (8th Cir., 1968), substantiating that of plaintiff. Evans states that such duty is to produce a vehicle which is reasonably fit for its intended use or for the purpose for which it was made and which is free from hidden defects, whereas Larsen insists that a manufacturer, although having no duty to make a product accident-proof or fool-proof, nevertheless, is under a duty to use reasonable care in the design so as to make it safe to the user for its foreseeable use and that its intended use on the streets includes the foreseeable possibility of collision with other automobiles. These two cases have been cited in most "second impact" cases in both state and federal jurisdictions, and have been discussed, analyzed, and criticized in both majority and dissenting opinions. It is therefore necessary to examine them both in some detail.

In Evans, plaintiff's decedent suffered injuries and death while driving a car which was struck in the side by another. Plaintiff there claimed that decedent's injuries were enhanced to the point of causing death because the automobile manufactured by the defendant, was designed with an "X" frame, rather than the supposedly superior perimeter frame being used by a competitor and grounded her action on specific negligence, implied warranty, and strict tort liability. After pretrial conferences, the District Court dismissed the com-

plaint on the ground that it failed to state a claim against defendant upon which relief could be granted. As the two-judge majority stated: "The major question before us is the nature of the duty which an automobile manufacturer owes to users of its product. This presents a question of law for the Court. . . . A manufacturer is not under a duty to make his automobile accident-proof or fool-proof; nor must he render the vehicles 'more' safe where the danger to be avoided is obvious to all. . . . The intended purpose of an automobile does not include its participation in collisions with other objects, despite the manufacturer's ability to foresee the possibility that such collisions may occur." Then, in what may have been a "tongue in cheek" remark, but nonetheless an attempt at hyperbolic analogy, the majority goes on to say: "As defendant argues, the defendant also knows that its automobiles may be driven into bodies of water, but it is not suggested that defendant has a duty to equip them with pontoons."

The third member of the Evans court wrote a vigorous and logical dissent. As he states so matter of factly: "The opinion of the court does not state affirmatively what General Motors' duty is. It rejects plaintiff's theory that General Motors, foreseeing the possibility of broadside collisions, had the duty to include side rails in design of the Chevrolet frame, so as to provide reasonable protection against death or injury from broadside collisions; and it inferentially accepts General Motors' theory that its duty was to design its automobile to be reasonably fit for the purpose for which it was made . . . and that that purpose, as a matter of law, cannot contemplate that automobile's participation in a collision. . . . In my view, General Motors' duty was to use such care in designing its automobiles that reasonable protection is given purchasers against death and injury from accident which are expected and foreseeable yet unavoidable by the purchaser despite careful use. See Restate-

ment (Second), Torts § 395. . . . I recognize that safety standards for automobiles would normally be a legislative matter. The United States Senate is now considering the question of federal standards. . . . But the possibility of future adequate legislative standards does not remove the necessity of presently deciding whether plaintiff should or should not have an opportunity to prove the allegations made in the complaint."

The Larsen court, emanating from the district of Minnesota, but involving an accident which occurred in Michigan, specifically rejected the "intended use" theory of Evans, which the trial court had followed in granting summary judgment in favor of the defendant. That case involved a head-on collision in which the plaintiff driver sustained enhanced injuries due to the rearward displacement of a claimed defectively designed steering shaft of the Corvair automobile which he was driving. The court said: "The manufacturer should not be heard to say that it does not intend its product to be involved in any accident when it can easily foresee and when it knows that the probability over the life of its product is high, that it will be involved in some type of injury-producing accident. . . . Where the manufacturer's negligence in design causes an unreasonable risk to be imposed upon the user of its products, the manufacturer should be liable for the injury caused by its failure to exercise reasonable care in the design. These injuries are readily foreseeable as an incident to the normal and expected use of an automobile. . . .Where the injuries or enhanced injuries are due to the manufacturer's failure to use reasonable care to avoid subjecting the user of its products to an unreasonable risk of injury, general negligence principles should be applicable. . .. . We do agree that under the present state of the art of an automobile manufacturer is under no duty to design an accident-proof or fool-proof vehicle or even one that floats on water, but such manufacturer is under

a duty to use reasonable care in the design of its vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of collision. Collisions with or without fault of the user are clearly foreseeable by the manufacturer and are statistically inevitable. . . . This duty of reasonable care in design rests on common law negligence that a manufacturer of an article should use reasonable care in the design and manufacture of his product to eliminate any reasonable risk of foreseeable injury."

The Eighth Circuit Court of Appeals reaffirmed its position in a case determining Iowa law without the benefit of a state decision in Passwaters v. General Motors Corp., 454 F. 2d 1270 (8th Cir., 1972), stating: "We think it now settled that a manufacturer does have the responsibility to avoid design in automobiles which can reasonably be foreseen as initially causing or aggravating serious injury to users of the highway when a collision occurs."

The problem is set forth in Dyson v. General Motors Corp., 298 F. Supp. 1064 (E. D. Penn., 1969), as follows: "In essence, the issue is whether the concept of 'intended use' includes foreseeable consequences of unintentional misuse." The court went on to answer that question by reaching the conclusion that a plaintiff who brings himself reasonably within the provisions of Restatement, Torts 2d, section 402A, is entitled to recover even when the case is one of enhanced injury or a "second accident."

The Kansas Supreme Court, although reversing the judgment of the trial court which had entered judgment for the plaintiff on a claimed negligent design of a brake, holding that the evidence did not disclose the vehicle to be unreasonably dangerous, in Garst v. General Motors Corp., 207 Kan. 2, 484 P. 2d 47 (1971), said: "The case at bar does not involve an 'implied warranty of design,' but it does involve negligence in design. On this point the manufacturer has a duty to use reasonable

care in the design of its product so it will be reasonably safe for its intended use, including any emergencies of use which can be reasonably anticipated."

Mickle v. Blackmon, 252 S. C. 202, 166 S. E. 2d 173 (1969), involved an injury to a passenger who was thrown forward and impaled on the gearshift lever, the knob of which shattered on impact. Although reversing a jury verdict for plaintiff because of erroneous instructions, the court there quoted with approval the following language from Spruill v. Boyle-Midway, Inc., 308 F. 2d 79 (4th Cir., 1962): " ' "Intended use" is but a convenient adaptation of the basic test of "reasonable foreseeability" framed to more specifically fit the factual situations out of which arise questions of a manufacturer's liability for negligence. . . . However, he must also be expected to anticipate the environment which is normal for the use of his product and . . . he must anticipate the reasonably foreseeable risks of the use of his product in such an environment.' " Continuing, the South Carolina court stated: "The issue for the jury was whether Ford in the design and selection of materials for the gearshift lever assembly negligently created an unreasonable risk of enhanced injury to passengers in a collision situation. . . . The primary issue . . . was whether the collision risk to which she was subjected by the design and composition of the gearshift assembly was unreasonable."

Additional cases from other jurisdictions could be cited, but they would add nothing to the logic perhaps already belabored.

Although never passed on specifically by this court, NJI No. 11.03 contains what seems to be a comprehensive and accurate statement of the law applicable to this situation and is in accord with what we think to be the better reasoned rule relating to "second impact" or enhanced injuries. We therefore hold that a manufacturer of goods has a duty to use reasonable care in the

design of goods to protect those who will use the goods from unreasonable risk of harm while the goods are being used for their intended purpose or any purpose which could be reasonably expected. The subjection of an automobile to accidental collision with another automobile or object while being used for its intended purpose is a use which a manufacturer should reasonably expect.

However, an automobile manufacturer is not an insurer that its product is, from a design viewpoint, incapable of producing injury. Furthermore, in the application of the general rule, whenever a "second impact" or enhanced injury occurs, this should not be an open invitation to a jury to speculate as to the issue of foreseeability or the unreasonableness of the risk of harm. This is no different than in any other tort case in which there is always the preliminary question of law for the court "not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed." Langemeier, Inc. v. Pendgraft, 178 Neb. 250, 132 N. W. 2d 880.

We are not unmindful of the language in Green v. Village of Terrytown, *supra*, that: " 'A motion for a summary judgment is not a substitute for a demurrer or a motion for a directed verdict.' . . . in tort cases of the kind where reasonable minds may differ as to whether an inference of negligence is to be drawn from the given set of facts, it can have no application." Of course, the corollary of that rule is that where reasonable minds may not differ as to the conclusion or inference to be drawn from the given set of facts, summary judgment is proper.

All the evidence relating to the claimed duty of the defendants to the plaintiff in the design of the gearshift lever knob is before the court and is undisputed, and in our opinion is not sufficient that reasonable minds

could properly find that the defectively designed product created a foreseeable and unreasonable risk of harm. In other words, there was no substantial competent evidence from which one reasonably could draw an inference of negligence on the part of defendants proximately causing plaintiff's injuries. Accordingly, the action of the trial court in granting summary judgment was correct and is affirmed.

AFFIRMED.

SMITH, J., not participating.