JAMES E. WAEGLI, APPELLANT, v. CATERPILLAR TRACTOR
CO., A CORPORATION, ET AL., APPELLEES.

251 N. W. 2d 370

Filed March 9, 1977.  No. 40835.

Herbert J. Friedman of Friedman & Berry, for appellant.

Cline, Williams, Wright, Johnson & Oldfather, Knudsen, Berkheimer, Endacott & Beam, and Barlow, Johnson, DeMars & Flodman, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. THOMAS, J.

This action for personal injuries was dismissed by the trial court at the conclusion of the plaintiff's case-in-chief.  Plaintiff appeals.  We affirm.

Plaintiff James E. Waegli was on the date of accident a 22-year-old heavy equipment operator, engaged specifically by Seward County to operate a Caterpillar model 613 tractor scraper.  The 613 consists of a power or tractor unit, mounted on two wheels, with the engine and cab in front of the wheels and a large scraper unit attached to the power unit mounted on two wheels to the extreme rear of the unit.

The machine is designed to gather and transport ap-

proximately 11 cubic yards of earth by means of a hydraulically operated blade and an elevating unit. The combined unit is nearly 32 feet long and, unloaded, weighs approximately 27,000 pounds.

Plaintiff, who will be referred to as Waegli, was hired by Seward County in July 1971, and received approximately 1½ hours of instructions in the operation of the unit.

The 613 sold to the county was not equipped with a parking brake which was an optional item. The evidence discloses that the subject of equipping the machine with a parking brake was not discussed with Seward County by the other defendants.

On September 15, 1971, Waegli and other employees of the county were engaged in road repair in rural Seward County. An old bridge had been removed and replaced with a steel culvert. Fill dirt was being scraped and hauled in the 613 to the culvert site where a road grader operated by another county employee would level and smooth the fill.

In some manner not described in the evidence, the road grader slipped off the road surface into a ditch from where it could not be extricated under its own power.

Waegli saw the grader in difficulty, dumped his load, and drove to the grader. He backed the 613 close enough to the grader so that a chain might be fastened to pull it out. The 613 did not leave the road surface.

After stopping the engine of his unit, Waegli hydraulically dropped the bowl, or scraping blades and compartment designed to hold the fill dirt, to the ground, and dismounted. The chain was hooked from the 613 to the grader, and the grader was pulled onto the road surface. After pulling the grader about 30 feet, the units were stopped, the transmission of the 613 was placed in neutral, the bowl again was lowered to the roadway, and the blade was pushed into the ground about 4 to 6 inches. Waegli again dismounted. He un-

hooked the chain from the 613, and, with his back to the 613, removed the chain from the grader. The 613 then rolled back and pinned Waegli between the two machines, injuring him seriously. The evidence discloses that the grade in the area was 7 percent rise from horizontal to the south. The 613 faced south and rolled back to the north.

This action was brought against the Caterpillar Tractor Co., Johnson Manufacturing Company, Lubbock, Texas, and the supplier Lincoln Equipment Company on three theories: Strict liability in tort, breach of warranty, and negligence. Seward County was joined by virtue of the workmen's compensation paid plaintiff and is not a part of this appeal. The trial court sustained a demurrer to the second theory. The case was tried on the remaining two theories.

Waegli here assigns as error the dismissal of his petition. The defendants asserted as grounds for the directed verdict 14 separate specifications. The trial court entered an order without specifying the grounds on which the dismissal was entered.

In Kohler v. Ford Motor Co., 187 Neb. 428, 191 N. W. 2d 601 (1971), this court held that as a condition of a recovery under the doctrine of strict liability the "plaintiff was unaware of the claimed defect." This holding has been criticized, NJI (1977 P.P.), Comment, § 11:20, p. 60, but to the effect that the knowledge of plaintiff to the claimed defect more properly ought to be an affirmative defense. We make no determination of that issue, but simply point out that in either circumstance, Waegli was conclusively shown to have knowledge of the claimed defect, i.e., the absence of a parking brake. The doctrine of strict liability is not applicable.

The only remaining issue is that of negligence of the defendants. Essentially the issue dispositive of the matter is whether the plaintiff's own evidence discloses

contributory negligence as a matter of law sufficient to bar recovery.

"In every case before the evidence is submitted to the jury, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it upon whom the burden of proof is imposed." Edquist v. Commercial Sav. & Loan Assn., 191 Neb. 618, 217 N. W. 2d 82 (1974). See, also, Thomas v. Owens, 169 Neb. 369, 99 N. W. 2d 605 (1959).

The party against whom a motion for directed verdict is directed is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence. Corbitt v. Omaha Transit Co., 162 Neb. 598, 77 N. W. 2d 144 (1956).

Prior to the accident, Waegli had operated the 613 an average of 9 hours a day, 5 days a week, for 5 to 6 weeks. He knew that the 613 was not equipped with a parking brake. Cases cited by Waegli concerning the duty to warn are not applicable.

There is no duty to warn of a known danger. Anstine v. Briggs, 191 Neb. 489, 215 N. W. 2d 878 (1974). Waegli had studied the operator's manual and was familiar with both the description and methodology of the "parking system" of the 613. Briefly, the system suggests that when parking, the bowl be. lowered and the wheels of the tractor unit be turned to the side, in a direction at a 90-degree angle from the scraper unit. Waegli knew prior to the accident that hydraulically driving the blade into the earth and thus raising the rear wheels would prevent the 613 from rolling from the parked position. He admitted that the accident could have been avoided if he had followed that procedure. This testimony was supported by Waegli's expert witness McMinn who testified to the identical fact and conclusion.

Waegli also knew that the 613 could roll backwards, even though he had lowered the bowl, if it was parked on a slope. On two separate occasions the 613 had rolled from its parked position by reason of insufficient lowering of the bowl. On the first occasion he stopped the rolling by placing a piece of railroad tie under the wheels. On the second occasion Waegli stopped it from rolling by lowering the bowl to a greater depth into the earth.

Waegli was totally and completely familiar with the existence of the claimed defect. He knew the tendency of the machine to roll and failed to take steps known to him to insure that the rolling did not take place. Waegli was contributorially negligent as a matter of law sufficient to bar his recovery in an action for negligence.

The trial court was correct in dismissing the petition at the close of the plaintiff's case and its judgment is affirmed.

AFFIRMED.