Virginia R. Hancock, Administratrix of the Estate of Lowell Burton Hancock, deceased, appellee, v. Paccar, Inc., a Delaware corporation, and Transport Indemnity Insurance Company, a corporation, appellants.

283 N. W. 2d 25

Filed September 4, 1979.   No. 41938.

James M. Bausch of Cline, Williams, Wright, Johnson & Oldfather, for appellants.

Asa A. Christensen and Donald J. Pepperl of Christensen Law Offices, P.C., and Robert I. Eberly, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C. J.

Defendant (Paccar) appeals from a jury verdict entered in favor of plaintiff and against Paccar in the amount of $251,180 resulting from the death of plaintiff's husband while operating a tractor-trailer on Interstate Highway No. 80 in York County, Nebraska. We first note that this case might have been entitled "Friedrich II." See Friedrich v. Anderson, 191 Neb. 724, 217 N. W. 2d 831. To a large extent, the review in this case, as in Friedrich v. Anderson, *supra,* requires an examination of the doctrine of strict liability as it applies to an alleged defective design and the effect such defect may have within the concept of "an enhanced injury." We have made such a review, together with a review of other errors assigned by defendant in this case, and conclude that the verdict of the jury should be affirmed.

The facts involved in this case disclose that about 5 a.m., on September 12, 1971, plaintiff's husband, Lowell Burton Hancock (deceased), was operating a certain 1969 Kenworth cab-over tractor owned by Scott Truck Lines, Inc., in an easterly direction on

interstate 80 in York County, Nebraska. The tractor was pulling a trailer loaded with about 35,000 pounds of fresh beef. At a location about 1½ miles east of the Waco, Nebraska, interchange, the tractor, which was then traveling at a speed of approximately 60 miles per hour, struck a deer on the highway. The impact of the deer on the truck was severe and resulted in the left side of the front bumper being bent backwards in a V-shape at the place where the bumper passed in front of the left front wheel. The bumper, as bent, was wedged between the inside of the left front wheel and the adjoining framerail. This forced the front wheel in a left turning position and locked it in place, which prevented the deceased from controlling or steering the truck. The tractor and trailer turned in a left direction, left the highway, and entered the median adjacent to the highway. Upon its entry into the median, the unit rolled over and slid into a guardrail which protruded from a nearby bridge abutment. This impact resulted in the death of deceased.

The 1969 Kenworth cab-over tractor which deceased was driving at the time of his collision was manufactured and sold by Paccar in 1969. The front bumper on the tractor, which was only 5 inches in front of the wheel, extended the full width of the front of the tractor. It was made of lightweight aluminum and had several cutouts and holes in the face of the bumper directly in front of the wheel area. These holes were located exactly where the bumper bent after impact. The outer ends of the bumper were not braced to the body of the tractor and were simply cantilevered.

Plaintiff, by her third amended petition, sought recovery on two separate causes of action. The first cause of action was based upon a common law theory of negligence and alleged that Paccar was negligent with regard to the design of the front bumper because (1) the bumper was too long, (2) the

bumper contained cutouts and holes, (3) the bumper was not braced at the ends, (4) the bumper was not made of alternative materials which would either not deform or would yield upon impact before blocking the steering, and (5) the bumper was not tested or inspected.

The second cause of action was based upon the doctrine of strict liability alleging that Paccar placed the bumper on the market without inspection at a time when the design was defective and not reasonably fit for ordinary and foreseeable uses. Paccar admitted that the collision occurred, but denied any liability. After trial the jury returned a verdict for plaintiff and against Paccar in the amount of $251,180.

Paccar assigns multiple errors, which for simplicity and convenience can best be summarized and grouped into several general categories. As so summarized and grouped, the assignments of error are as follows: (1) That the trial court erred in failing to direct a verdict in favor of Paccar and against plaintiff; (2) that the trial court erred in submitting certain instructions to the jury which were not supported in the evidence; (3) that the trial court erred in refusing to give certain instructions requested by Paccar; and (4) that the trial court erred in permitting the introduction of certain testimony. We shall address the various groups in the order in which they are listed above.

Paccar's right to a directed verdict, made either at the close of the plaintiff's case or after all of the evidence, could only be sustained if one of two situations existed: (1) If there was insufficient evidence to create a question of fact for the jury to consider; or (2) under the theories of law pleaded by the plaintiff, plaintiff could not recover as a matter of law.

We first address the legal theories. If the plaintiff could prove that Paccar did in fact design a bumper

in a negligent manner and the negligence was the proximate cause of deceased's injury and death, then under a common law theory of negligence, plaintiff could recover. " 'A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its probable use, is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured.' " Rose v. Buffalo Air Service, 170 Neb. 806, 104 N. W. 2d 431.

" 'In principle, a manufacturer or other person owning or controlling a thing that is dangerous in its nature or is in a dangerous condition, either to his knowledge or as a result of his want of reasonable care in manufacture or inspection, who deals with or disposes of that thing in a way that he foresees or in the exercise of reasonable care ought to foresee will probably carry that thing into contact with some person, known or unknown, who will probably be ignorant of the danger, owes a legal duty to every such person to use reasonable care to prevent injury to him. * * * In the application of the principle it is immaterial whether or not the conduct of a defendant amounted to a breach of the contract between him and the immediate buyer from him. The duty is not created by contract, but is an instance of the general human duty not to injure another through disregard of his safety.' " Colvin v. Powell & Co., Inc., 163 Neb. 112, 77 N. W. 2d 900. Whether Paccar's acts in this case fall within the legally impermissible spectrum so as to bring about liability is a question of fact for the jury to decide. Graham v. Simplex Motor Rebuilders, Inc., 189 Neb. 507, 203 N. W. 2d 494. If the evidence was sufficient to raise a

proper question of fact, a matter we shall review momentarily, Paccar was not entitled to a directed verdict as a matter of law as against the plaintiff's theory of liability under common law negligence.

The question of liability under a theory of strict liability poses a different question but in the final analysis the same result. In the case of Friedrich v. Anderson, 191 Neb. 724, 217 N. W. 2d 831, we held: "* * * a manufacturer of goods has a duty to use reasonable care in the design of goods to protect those who will use the goods from unreasonable risk of harm while the goods are being used for their intended purpose or any purpose which could be reasonably expected. The subjection of an automobile to accidental collision with another automobile or object while being used for its intended purpose is a use which a manufacturer should reasonably expect."

In declaring in Friedrich v. Anderson, *supra*, a rule we recognized to be of first impression in Nebraska, we called attention to the two federal cases which appeared to have set up the two extremes with regard to employing the doctrine of strict liability in a design accident case. The first which narrowed and limited liability was Evans v. General Motors Corporation, 359 F. 2d 822 (7th Cir., 1966), and the second which expanded and extended liability was Larsen v. General Motors Corporation, 391 F. 2d 495 (8th Cir., 1968). The facts of each case are summarized in the Friedrich case.

Time and the realities of life, however, have narrowed the differences between Evans v. General Motors Corporation, *supra*, and Larsen v. General Motors Corporation, *supra,* until in 1977 the Circuit Court of Appeals for the Seventh Circuit, in the case of Huff v. White Motor Corp., 565 F. 2d 104, overruled their earlier decision in the Evans case, and brought the Seventh Circuit into line with Larsen, saying: "One who is injured as a result of a mechan-

ical defect in a motor vehicle should be protected under the doctrine of strict liability even though the defect was not the cause of the collision which precipitated the injury. There is no rational basis for limiting the manufacturer's liability to those instances where a structural defect has caused the collision and resulting injury. This is so because even if a collision is not caused by a structural defect, a collision may precipitate the malfunction of a defective part and cause injury. In that circumstance the collision, the defect, and the injury are interdependent and should be viewed as a combined event. Such an event is the foreseeable risk that a manufacturer should assume. Since collisions for whatever cause are foreseeable events, the scope of liability should be commensurate with the scope of the foreseeable risks."

Such result, based upon either simple logic or the law, makes sense. It would be a strange result if we said that a manufacturer who carefully designs a product and thereafter negligently produces it should be held liable, but a manufacturer who negligently designs the product and thereafter carefully produces it pursuant to the negligent design should be relieved of liability.

Further, the clear meaning of section 402 A of Restatement, Torts 2d, p. 347, leads to the conclusion expressed in Larsen v. General Motors Corporation, *supra,* and now Huff v. White Motor Corp., *supra.* The Restatement section reads as follows: "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. (2) The rule stated in Subsection

(1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.''

We think comment d following is particularly appropriate: ''The rule stated in this Section is not limited to the sale of food for human consumption, or other products for intimate bodily use, although it will obviously include them. It extends to any product sold in the condition, or substantially the same condition, in which it is expected to reach the ultimate user or consumer. Thus the rule stated applies to an automobile, a tire, an airplane, a grinding wheel, a water heater, a gas stove, a power tool, a riveting machine, a chair, and an insecticide. * * *'' Restatement, Torts 2d, § 402 A, p. 350.

Paccar's argument that strict liability cannot apply because plaintiff must prove that the defect existed at the time the product left the manufacturer fails to recognize that the defective design, if as a matter of fact it did exist, was created and completed when the manufacturer designed the bumper and assembled it on the truck. If in fact the design was defective, it was defective when it was designed. That act occurred while it was still in the hands of the manufacturer and under his control. The requirements necessary to bring the actions within the definition of strict liability exist. No good reason exists for not applying the doctrine of strict liability to a case where the defective design results in an enhanced injury to the plaintiff even though the product designed did not cause the initial collision. See Comment, Manufacturer's Liability for Defective Automobile Design, 42 Wash. L. Rev. 601.

Liability has been imposed in all variety of cases where the defective design did not proximately cause the collision but did result in an enhanced injury to the driver. The cases range from a severe

lacerating injury to a plaintiff's leg which came in contact with unshielded metal flanges protruding outward from the base of a wheel cover of an automobile following an initial impact between the vehicle and the left handlebar of a motorcycle, Passwaters v. General Motors Corporation, 454 F. 2d 1270 (8th Cir., 1972), to a severe burn sustained by a plaintiff when gasoline ignited which came from a fuel tank not designed with a firewall around it, Nanda v. Ford Motor Company, 509 F. 2d 213 (7th Cir., 1974). Liability from enhanced injuries has also been found in defectively designed door latches, Melia v. Ford Motor Co., 534 F. 2d 795 (8th Cir., 1976), defectively designed fuel systems, Huff v. White Motor Corp., *supra,* ashtrays, roofs, steering assemblies, and others. See, Annotation, Liability of Manufacturer, Seller, or Distributor of Motor Vehicle for Defect Which Merely Enhances Injury from Accident otherwise Caused, 42 A. L. R. 3d 560, and Annotation, Liability of manufacturer or seller for injury caused by automobile or other vehicle, aircraft, boat, or their parts, supplies, or equipment, 78 A. L. R. 2d 460. On the question of inspection generally, see Annotation, Manufacturer's Duty to Test or Inspect as Affecting His Liability for Product-Caused Injury, 6 A.L.R. 3d 91.

While it is true and we have said that an automobile manufacturer does not insure that its product is incapable of producing injury from a design viewpoint, Friedrich v. Anderson, 191 Neb. 724, 217 N. W. 2d 831, nevertheless, in this day and age a consumer should be able to purchase a vehicle believing that the manufacturer has considered the likelihood of things which may occur to the vehicle. Likewise, a consumer may reasonably expect that the manufacturer has performed a minimum number of tests and inspections to assure that a collision at speeds of normal use of the vehicle will not cause an enhanced injury.

Paccar was aware that the tractor-trailer might strike an animal on the highway while traveling at a high speed. Such events are common enough that the various departments of roads of several states frequently post warnings to drivers to watch for animals, especially deer crossing the road. Furthermore, Paccar knew that the makeup of the bumper was such that, upon severe impact, the bumper would bend backward wherever such bending was not otherwise prevented. With that knowledge, it was not unreasonable to expect that the manufacturer had taken steps and made tests to be sure that the steering was not impaired upon impact. The trial court therefore was not in error in refusing to direct a verdict for Paccar based on a claim that plaintiff could not recover under a theory of strict liability for a defective design which resulted in an enhanced injury. Indeed, if the evidence was sufficient, plaintiff could recover.

Paccar further argues, however, that even if some right of recovery existed under the law, the evidence was insufficient to create a question of fact sufficient to submit this case to the jury.

An examination of the entire record, however, would appear to create questions of fact on either cause of action. Plaintiff's expert testified that in his opinion the bumper was negligently and defectively designed in a number of ways, any one of which, if believed by the jury, could have established the proximate cause of the injury. It was at best a "t'is and t'aint" argument and for the jury to resolve. On appeal we should not second guess the jury or seek to impose our notion of the facts as opposed to theirs. In determining the sufficiency of the evidence to sustain a verdict, it must be considered most favorably to the successful party and every controverted fact resolved in his favor and he must have the benefit of inferences as reasonably deducible from it. Marquardt v. Nehawka Farm-

ers Coop. Co., 186 Neb. 494, 184 N. W. 2d 617. Likewise, a jury verdict based upon conflicting evidence cannot be set aside unless clearly wrong. Haney v. L. R. Foy Constr. Co., 186 Neb. 528, 184 N. W. 2d 628. We cannot say from a reading of the record that the jury did not act as reasonable people or did not reach a reasonable conclusion. We cannot reverse this case on a question of fact contrary to the actions of the jury.

Paccar further maintains that the evidence was insufficient to prove several essential elements of the causes of action and therefore even though plaintiff offered evidence which established certain elements of the causes of action, she failed nevertheless to meet her entire burden. In particular, Paccar claims plaintiff failed to prove: (1) That Paccar did not comply with the "state of the art" in designing the bumper; (2) that the defective design, if it existed, was the proximate cause of deceased's injury and death; (3) that the design did create an unreasonably dangerous situation; (4) that the defect was not obvious to the deceased; and (5) that deceased did not know of the defect, if one existed.

Paccar's position with regard to the state of the art apparently is that no one was designing or manufacturing a bumper that was any different from that which Paccar designed and manufactured. Furthermore, Paccar contends there was no evidence indicating the state of the art was such that anything more was being done.

We believe, however, that Paccar misconstrues what constitutes the state of the art and how it applies in a strict liability case. While the jury may consider, as evidence of the state of the art, the fact that no manufacturer is doing that which it is claimed could be done, such evidence will not establish conclusively the state of the art. Obviously, the inaction of all the manufacturers in an area should not be the standard by which the state of the art

should be determined. Whether the design represents the state of the art is still a question of fact to be determined by the jury.

Judge Learned Hand in the case of The T. J. Hooper, 60 F. 2d 737 (2nd Cir., 1932), said: "Indeed in most cases reasonable prudence is in fact common prudence; but strictly it is never its measure; a whole calling may have unduly lagged in the adoption of new and available devices. It never may set its own tests, however persuasive be its usages. Courts must in the end say what is required; there are precautions so imperative that even their universal disregard will not excuse their omission." See, also, Gelsumino v. E. W. Bliss Co., 10 Ill. App. 3d 604, 295 N. E. 2d 110.

The question therefore is not whether anyone else was doing more, although that may be considered, but whether the evidence disclosed that anything more could reasonably and economically be done. Northwest Airlines v. Glenn L. Martin Company, 224 F. 2d 120 (6th Cir., 1955); Whistle Bottling Co. v. Searson, 207 Ala. 387, 92 So. 657; Restatement, Torts 2d, § 298, p. 68. Plaintiff tendered evidence that there were alternatives which could be used and which, if used, would have prevented the enhanced injury. There was evidence that Paccar was using some of the alternatives itself and that both the material and the knowledge to design a safer alternative existed. That evidence included the use of a shorter bumper, a breakaway bumper, or a stronger bumper, all of which could have been designed in 1969. The jury was not required to accept any of those suggestions. Nevertheless, those were questions of fact which the jury had to resolve.

With regard to the question of proximate cause, Paccar argues that plaintiff failed to prove that the accident would not have happened "but for" the bumper and therefore failed to prove the proximate cause.

In support of that position, Paccar argues that there was evidence that even if the bumper had not extended the full width of the tractor, the deer might have gotten into the wheel and caused a similar injury. Paccar fails to recognize that plaintiff's obligation is to prove by a preponderance of the evidence that the alleged negligence of Paccar was the proximate cause of the injuries for which damages are sought to be recovered. Frerichs v. Eastern Nebraska Public Power Dist., 154 Neb. 777, 49 N. W. 2d 619. Proximate cause, as used in the law of negligence, is that cause which in a natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the injury would not have occurred. Shupe v. County of Antelope, 157 Neb. 374, 59 N. W. 2d 710. Plaintiff was not required to prove that no other event could have produced a similar result even though it did not produce such a result. Furthermore, no one in this case can honestly argue or dispute the fact that the enhanced injury was occasioned by reason of the bumper bending and wedging between the wheel and the framerail, thereby preventing the deceased from retaining control over the truck. There certainly was an issue of fact as to whether or not the design of the bumper was the proximate cause. The best that can be said is that there was a conflict with regard to the proximate cause. Where evidence conflicts on a question of proximate cause of alleged injuries, the question is ordinarily for the jury under proper instructions. Brewer v. Case, 192 Neb. 538, 222 N. W. 2d 823; Abbott v. Northwestern Bell Telephone Co., 197 Neb. 11, 246 N. W. 2d 647. There was sufficient evidence presented to create a question of fact.

Paccar further argues that the plaintiff failed to prove the bumper was unreasonably dangerous. This argument appears to be tied to the argument that the defect was obvious to the deceased. Paccar

argues the evidence failed to establish that full length bumpers had a propensity for causing physical harm beyond that which would be contemplated by drivers of such tractors.

The evidence failed to disclose that the alleged defect was obvious. It is true that if the deceased knew all of the possibilities that might occur if the truck struck a deer with a lightweight aluminum bumper, located 5 inches from the wheel, and the bumper bent and wedged in between the wheel and the framerail, the defect might be obvious. However, the evidence did not disclose that those possibilities were obvious. Nor does speculation create an obvious defect. Certainly, if one thought about any of the possibilities which might occur in an accident, one might realize a potential defect. The law, however, does not require a plaintiff to speculate on injury in order to recognize a possible defect. Had the bumper already been bent before the deceased started to move the vehicle, the argument with regard to an obvious defect might be made. In that absence, such argument does not seem appropriate.

In Nanda v. Ford Motor Company, 509 F. 2d 213 (7th Cir., 1974), the motorist was struck in the rear and pushed into the southbound lane where she was struck in the rear by a second vehicle. The collision caused the gas tank to explode and the plaintiff suffered burns. Plaintiff sued on the basis that the manufacturer negligently designed the gas tank by failing to put some type of firewall around the gas tank. If Paccar's theory of obvious defect is correct, it could be argued therefore that the owner of an automobile should recognize that if there is not a firewall around the gas tank when struck from the rear, injury will follow. In affirming a judgment for the plaintiff, the court in Nanda said: "Plaintiff in this case proceeded upon the theory of strict liability adopted in Suvada v. White Motor Co., 32 Ill. 2d 612, 210 N. E. 2d 182 (1965). In order to recover against

the manufacturer under that theory, plaintiff must prove that his injury 'resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control.' [Citations omitted.]" Nothing was said about anticipating defects.

Likewise, in Melia v. Ford Motor Company, 534 F. 2d 795 (8th Cir., 1976), action was brought against an automobile manufacturer based upon an alleged design defect in the left door latch assembly. The Eighth Circuit, in reviewing what it anticipated was the Nebraska law, said: "An analysis of the record here reveals sufficient evidence of unsafe design creating a foreseeable and unreasonable risk of harm. Two well qualified professional engineers testified for the plaintiff that the door latch deviated from safety engineering practice and was not protected from horizontal external forces which could release the latch. In their opinion the collision to the car had only a 'brushing' horizontal effect on the door and the latch had no 'fail-safe' mechanism to prevent the car door from flying open."

Again, it can be argued that if the drivers had thought about all of the consequences the defect would be obvious. That, of course, is not what is meant by an obvious defect. An examination of all the various cases that have been brought to our attention concerning strict liability and enhanced injury fails to disclose any obligation or requirement on the plaintiff's part to anticipate and think out all the consequences which may come from a defect. The manufacturer has this obligation, not the operator. A defect is not obvious simply because, had one thought about it, one would recognize the problem.

Paccar correctly notes that we have not yet had an opportunity to define what is meant by "unreasonably dangerous" in a strict liability case. The trial court instructed the jury in this case that the

term "unreasonably dangerous" meant that "the product had a propensity for causing physical harm beyond that which would be contemplated by the ordinary user or consumer who purchases it, with the ordinary knowledge common to the foreseeable class of users as to its characteristics." This was a correct statement of the law and we so adopt it as the definition of "unreasonably dangerous" in a strict liability case.

For the reasons we have already suggested with regard to "obvious defects" we find that there was sufficient evidence from which the jury could reasonably conclude that the design of the bumper was "unreasonably dangerous." Paccar knew the wheel was unprotected from the bumper. It also knew it had not designed the bumper to protect the wheel from large objects, likely to be struck by the truck at high speeds, which, upon impact, might bend the bumper impairing steering. Yet no action was taken by the manufacturer to protect the wheel from such impairments. That was sufficient to raise a question of fact as to whether the bumper in its present condition was unreasonably dangerous.

It is not reasonable to assume that an ordinary person with ordinary knowledge as to the characteristics of a bumper would know that if the truck in question, with the bumper in question, struck a deer at 60 miles per hour, the bumper would bend into the wheel and cause the tractor to lose control. Section 402 A of Restatement, Torts 2d, p. 352, when talking about a product being "unreasonably dangerous," refers in terms of the "ordinary consumer" with "ordinary knowledge common to the community." The section does not refer to experts. There was sufficient evidence from which the jury could determine that the design of the bumper was "unreasonably dangerous."

Finally, Paccar argues that plaintiff failed to prove that deceased was not aware of the defect. In

support of this position Paccar cites the cases of Waegli v. Caterpillar Tractor Co., 197 Neb. 824, 251 N. W. 2d 370, and Kohler v. Ford Motor Co., 187 Neb. 428, 191 N. W. 2d 601. Paccar is in error as to its reading of Waegli. We did not there say that plaintiff must prove lack of knowledge. In Waegli, we pointed out that language found in Kohler has been criticized and that, in any event, no determination of that issue was being made in Waegli.

A reading of Kohler discloses that the matter of the plaintiff's knowledge was not directly passed upon. The court did approve an instruction which contained as an item of proof that "the plaintiff was unaware of the claimed defect." However, no ruling on that portion of the instruction was made.

Later in Hawkins Constr. Co. v. Matthews Co., Inc., 190 Neb. 546, 209 N. W. 2d 643, we held that " 'contributory negligence' in the sense of a failure to discover a defect or to guard against it, is not a *defense* to a suit in strict tort, * * *. Assumption of risk and misuse of the product are." (Emphasis supplied.) What we recognized was that assumption of the risk was a *defense*. See, also, Garcia v. Howard, 200 Neb. 57, 262 N. W. 2d 190. The fundamental principle of the law of evidence is to the effect the burden of proof in any cause rests upon the party who asserts the matter. 29 Am. Jur. 2d, Evidence, § 134, p. 167. As an example, in Nebraska contributory negligence is an affirmative defense and the burden is upon the defendant to establish such defense. Kaspar v. Schack, 195 Neb. 215, 237 N. W. 2d 414. To the same extent and for the same reasons, assumption of risk, when imposed to defeat recovery, is likewise an affirmative defense and the burden is upon the defendant to establish such defense. 29 Am. Jur. 2d, Evidence, § 137, p. 173; 57 Am. Jur. 2d, Negligence, § 274, at p. 664. No plaintiff should be required to prove the absence of all possible defenses in order to recover. That burden properly

belongs to the defendant. To the extent that any confusion still remains we hold that a plaintiff in a strict tort liability case is *not* required to plead and prove he was unaware of the defect.

Paccar further claims that the trial court erred in submitting to the jury instruction No. 2, which set out the various claims of negligence made by plaintiff, because the claims were unsupported in the evidence. This assignment must fail for two reasons. In the first instance, the instructions were submitted to counsel and no objections were made to the instructions. We have previously held that the failure to object to instructions after they have been submitted to counsel for review will preclude raising an objection on appeal. Libbey-Owens Ford Glass Co. v. L & M Paper Co., 189 Neb. 792, 205 N. W. 2d 523; Haumont v. Alexander, 190 Neb. 637, 211 N. W. 2d 119. But beyond that, the evidence introduced by plaintiff, if believed by the jury, was sufficient to permit the court to include the instruction as given. It should be kept in mind the court was not instructing the jury as to the truth of the matter in the instruction, but was simply advising the jury as to what the plaintiff's claims were, as set forth in the third amended petition. The court then instructed the jury that the previous instructions which set out the claims "merely state the claims and allegations of the parties and except for the admissions therein are not to be regarded as evidence in the case." Instructions to the jury should be considered as a whole, and if they fairly submit the case, they are not erroneous. First Mid America, Inc. v. Palmer, 197 Neb. 224, 248 N. W. 2d 30.

Specifically, Paccar objects now to those portions of the instructions given by the trial court which advised the jury that plaintiff maintained Paccar was negligent in that the bumper contained cutouts and holes; in that the bumper was not properly braced; in that Paccar did not utilize alternate materials

which were either stronger or of a brittle nature which, upon sufficient impact, would break away rather than deform in a permanent manner; and in that Paccar was negligent in failing to conduct tests, inspections, and calculations necessary to determine the capacity of the bumper to yield upon impact. While again the jury need not have accepted any of those matters, there was sufficient evidence introduced by the plaintiff which would at least have raised the issue in the manner in which it was submitted to the jury by the court. There is no error in this regard.

Paccar further assigns as error the court's failure to instruct the jury on two requested instructions sought by it. Those instructions read as follows: "A manufacturer does not have a duty to design and manufacture a product which represents the ultimate in safety or design." A trial court is not required to give a proffered instruction which unduly emphasizes a part of the evidence in the case. First Mid America, Inc. v. Palmer, *supra*. While the trial court did refuse that request, the trial court did in instruction No. 10 advise the jury: "* * * [A] manufacturer is not an insurer that the product is, from a design viewpoint, incapable of producing injury." The language may not be identical; however, reading all of the instructions together as we are required to do, we do not believe the failure of the trial court to give requested instruction No. 3, in view of the entire instructions given, resulted in any prejudicial error to Paccar. Moreover, there was no evidence introduced by the parties to prove that the evidence introduced by plaintiff as a possible alternative design did in fact represent the ultimate in safety or design. Under the circumstances and evidence in the case, the refusal to instruct the jury in accordance with Paccar's requested instruction No. 3 was not error.

Paccar further alleges that the trial court erred in

refusing to give its requested instruction No. 6 which read: "The law does not require that a manufacturer guard against an injury from a danger which is obvious or which is discoverable by reasonable inspection." Again, the trial court did instruct the jury in instruction No. 9 that "* * * [T]here is no duty to warn of a known danger." Insofar as the first part of the defendant's requested instruction No. 6 is concerned, we believe the court's instruction did sufficiently advise the jury with regard to known or obvious defects. Paccar cites us no authority, and we have found none, which obligates a user of a product to make an inspection to uncover an unknown defect. We believe the law with regard to strict liability to be to the contrary. It is not incumbent upon a plaintiff to discover a defect. Hawkins Constr. Co. v. Matthews Co., Inc., 190 Neb. 546, 209 N. W. 2d 643; Restatement, Torts 2d, § 402 A, note n, at p. 356. We therefore find no error in the court's failing to give Paccar's requested instructions.

Paccar further assigns as error the trial court's permitting plaintiff's witnesses to testify as to the availability of a breakaway bumper in 1976, although the vehicle was manufactured in 1969. As pointed up by plaintiff, the purpose of the testimony was to show that there were subsequent remedial measures taken and that the necessary material was available in 1969. Paccar must further keep in mind that plaintiff sought recovery on two separate theories: (1) Common law negligence; and (2) strict liability. In a negligence action such evidence may be relevant to show that a different and safer design of a product was feasible at the time the product in question was designed, particularly if the defendant claims otherwise. Farner v. Paccar, Inc., 562 F. 2d 518 (8th Cir., 1977). Examination of the evidence would indicate that the changes made in 1976 were done with knowledge and material which was available in 1969. There appears nothing

from the evidence to indicate that manufacturers would not have been able to design and build a breakaway bumper in 1969, as in fact they did in 1976. Such evidence was properly admissible.

Finally, Paccar contends that the trial court erred in permitting the plaintiff's expert witness, John Hill, to testify concerning the alleged effectiveness of the bumper because he was not familiar with the state of the art in 1969 with regard to bumper design. We believe what we have above said with regard to the state of the art applies here. Again, it is because Paccar believes if it is shown that no one in the field was taking necessary steps, it is a complete defense to strict liability. While it may aid in establishing what was reasonable, it is not conclusive. For reasons already pointed out, we do not believe the trial court committed error in not striking the plaintiff's expert witness testimony. The credibility of witnesses and the weight to be given their testimony were for the jury. Merten v. Pedersen, 199 Neb. 34, 255 N. W. 2d 869. They chose to believe the plaintiff's witness and were entitled to do so.

For the reasons therefore given, we find that no error was committed and that the verdict of the jury and judgment entered by the trial court must in all respects be affirmed.

AFFIRMED.

CLINTON, J., dissenting.

I dissent because I believe the undisputed facts did not establish a cause of action under either strict liability in tort or negligent design under the prior decision of this court. I deem it unwise, for reasons which are hereafter set forth, to extend the doctrines to the point that the majority opinion does, i.e., although without saying so it essentially makes the manufacturer an insurer.

The essence of the majority opinion is that the mere opinion of an expert, rendered after the fact, is sufficient to make a prima facie case admissible to

the jury. Such an opinion may or may not be sufficient for that purpose. When legal doctrines are being extended it is for the court to define the extent of the growth. It is not a factual question to be determined by testimony, expert or otherwise.

It is not practical within the bounds of a brief dissent to discuss all of the fallacious underpinnings of the majority opinion so we mention only those which seem most significant.

The purpose of a bumper on a motor vehicle is not to guard against damage to either persons or property on high speed impacts. The bumper in this case was neither negligently designed nor was it unreasonably dangerous. It had no propensity to cause harm. This is not the case as in Kohler v. Ford Motor Co., 187 Neb. 428, 191 N. W. 2d 601 (1971), where a gear in the steering mechanism was defective when it left the manufacturer and made the vehicle dangerous to drive and difficult to control and hence had a propensity to cause harm.

What the plaintiff has argued and what the court has accepted in this case is the contention that if a device is constructed in a different way, e.g., stronger, then liability follows because an injury happening in a particular fashion might have been avoided, even though the injury might have occurred in any event had the circumstances of the action been different. The plaintiff has argued that either the bumper should have been shorter, not projecting in front of the wheel; or it should have been a breakaway bumper, which would not wedge; or it should have been stronger, so that it would not impinge on the wheel. However, in each of these alternatives it is clearly possible that the same result could have occurred even though through a different mechanism. In the case of the short bumper or the breakaway bumper the animal might have lodged between the wheel thus restricting steerability, or if the object struck had been some sizable hard or

sharp object it might have deflated a tire and made the truck difficult to steer. If the object had been a hog it could have passed under a strong bumper, under the wheel, and thus put the truck out of control. If the object struck had been a horse or a moose, it might have, regardless of the bumper, been propelled upward into the windshield injuring the driver. In such cases ought the manufacturer to have designed and furnished a bumper of a type which would have prevented that particular kind of accident? Clearly that could be done.

In this case the truck owner selected the particular bumper which he wanted, one of light weight which reduced the total weight of the truck. No statute or design requirement of the law prohibits any of the alternatives which were available to the purchaser. Let us give another example. Instantly inflatable airbags for passenger compartments in motor vehicles are available and are feasible. Are manufacturers liable because they are not furnished or because the user prefers not to have one?

What the court does in this case is devise a theory, after the fact, to afford liability for a particular accident happening in a particular way. This can be done in almost every case. It is probably possible by hindsight to design machines or parts which will avoid particular types of accidents. It is not reasonably possible to design something which will avoid injury in every case in every circumstance.

If the court's purpose is one of social policy to assure that all injuries are to be compensated, then that should be done by the Legislature and the costs spread over the widest possible base.

A manufacturer does not have a duty to design a product which represents the ultimate in safety or design, but rather, has a duty to design a product which is reasonably safe. Mitchell v. Machinery Center, Inc., 297 F. 2d 883 (10th Cir., 1961); Marker v. Universal Oil Products Company, 250 F. 2d 603

(10th Cir., 1957); Olson v. Arctic Enterprises, Inc., 349 F. Supp. 761 (D. N. D., 1972); Garst v. General Motors Corporation, 207 Kan. 2, 484 P. 2d 47 (1971); and Stevens v. Durbin-Durco, Inc., 377 S. W. 2d 343 (Mo., 1964).

In Kohler v. Ford Motor Co., *supra*, this court applied the principles of Restatement, Torts 2d, § 402 A, p. 347, at p. 352. Comment i to that section states in part: "The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer. . . . The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." It is common knowledge that bumpers on motor vehicles are not designed to avoid damage and injury in high speed impacts. Comment k to section 402 A of the Restatement says in part: "There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use." The trial court should have granted the motion for a directed verdict.

BOSLAUGH, J., joins in this dissent.