Gordon L. **STARR**, Appellant,

v.

**J. HACKER COMPANY, INC.** and Douglas & Lomason Company, Appellees.

No. 81–1985.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1982.

Decided Sept. 22, 1982.

Ronald J. Palagi, J. Michael Moriarty, Omaha, Neb., for appellant.

Thomas J. Shomaker of Sodoro, Daly & Sodoro, Omaha, Neb., for appellee J. Hacker Co., Inc.

Before ROSS, Circuit Judge, HENLEY, Senior Circuit Judge, and STEVENS,* District Judge. ·

STEVENS, District Judge.

Appellant Gordon L. Starr, a tool and die repairman, brought this strict liability action for injuries to his wrist and hand sustained as he attempted to repair a malfunctioning stripper plate in a die set. Defendants are J. Hacker Company, Inc., designer and manufacturer of the die set, and Douglas & Lomason Company, Starr's employer (hereinafter collectively referred to as Hacker). Designed to manufacture left- and right-side members of Ford automobile seats, the die set was a continuous-feed progressive die with four stations and was used in a 400-ton press. Attached to the top half of the first stage of the die was a metal stripper plate, a device used to loosen—or strip—the material from the die af-

---

* The Honorable Joseph E. Stevens, Jr., United States District Judge, Eastern and Western Dis- tricts of Missouri, sitting by designation.

ter it had been pressed into shape. The stripper plate measured seventeen by twenty-two inches and was seven-eighths of an inch thick; it weighed about sixty-seven pounds. The stripper plate was suspended from the upper half of the die with "strippits," which are spring-loaded devices which support the weight of the stripper plate and, when compressed, also provide the necessary stripping force.

On December 21, 1977, the stripper plate became caught in the die. Starr crawled into the die after it had been blocked open and began to loosen the screws in the ends of the strippits which held the stripper plate up. It fell unexpectedly, landing on Starr's right arm. It was then discovered that several of the strippits were broken and were not supporting the weight of the stripper plate.

The primary issue at trial was whether the use of strippits constituted an unreasonably dangerous design defect. Starr also offered proof on his allegation of failure to warn. The jury returned a verdict for the defendants.

■ Starr contends the trial court erred in giving instruction nine on the defense of state of the art, arguing that the testimony and pleadings had removed the issue from the case. Starr points to evidence that it was technically and economically feasible to use additional means of securing the stripper plate so that it would not fall if the strippits failed. Hacker does not respond directly to this argument but instead simply recites that state of the art is a defense to a products liability action under Nebraska law. Neb.Rev.Stat. § 25–21,182 (1979); *Hancock v. Paccar, Inc.*, 204 Neb. 468, 283 N.W.2d 25, 34–35 (1979).

"Preliminarily we note that although state law determines the substance of jury instructions in a diversity action, the grant or denial of jury instructions is a matter of procedure and is controlled by federal law and the Federal Rules of Civil Procedure." *Wright v. Farmers Co-op*, 620 F.2d 694, 696–97 (8th Cir. 1980). Obviously, "[t]he trial court should not instruct the jury on matters about which no evidence has been presented." *Id.* at 697. On the other hand, "[a] litigant is entitled to have the jury charged concerning his theory of the case if there is any evidence to support the claim, direct or circumstantial." *Strudl v. American Family Mutual Insurance Co.*, 536 F.2d 242, 246 (8th Cir. 1976).

A review of the record indicates there was evidence to support the submission of state of the art as a defense. Although Starr offered evidence that other devices were available to secure the stripper plate, there was also evidence that the design of the stripper plate was consistent with industry-wide standards. Moreover, there was conflicting evidence whether some of those other devices would have performed satisfactorily on this particular die. Joseph Hacker testified that the "primary prerequisite of automotive tooling" is the ability "to take parts out when the press is open without taking the die out of the press." To remove a large die such as this one from the press requires "a tremendous amount of time" and "a lot of heavy moving equipment." In contrast, strippits permit a part to be removed while the die is in the press because the screws on the ends of the strippits are accessible from the working surface of the die.

This sampling of the evidence indicates that the trial court acted properly in submitting the issue. "Whether the design represents the state of the art is still a question of fact to be determined by the jury." *Hancock*, 283 N.W.2d at 35.

■ Starr contends the trial court erred in giving three other instructions although no objections thereto were made before the jury retired. Hacker asserts the objections have therefore been waived, citing various Nebraska cases. In point of fact, whether a party need object to an instruction to preserve the matter for appeal is a question of procedure governed by federal, and not state, practice. *McNamara v. Dionne*, 298 F.2d 352, 355 (2d Cir. 1962); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2553 at 639 (1971). Rule 51 of the Federal Rules of Civil Procedure provides: "No

party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." "The plain error exception to compliance with Rule 51 is narrow and confined to the exceptional case where error has seriously affected the fairness, integrity or public reputation of judicial proceedings." *Rowe International, Inc. v. J–B Enterprises, Inc.*, 647 F.2d 830, 835 (8th Cir. 1981).

■ The exceptional circumstances necessary to invoke the plain error doctrine are entirely lacking on the record presented here. The court has reviewed the instructions as a whole and finds they fairly submitted the issues raised by the evidence. *Wright*, 620 F.2d at 697. For instance, Starr complains that instruction five on duty to warn incorrectly stated that a manufacturer has no duty to warn of dangers "that should be known to anyone using the product with *reasonable care*" instead of imposing a duty upon the manufacturer to warn of foreseeable dangers which an *ordinary user* might encounter. Even assuming instruction five was in some way erroneous, the ordinary user standard was defined in instruction twelve, where the jury was told that a manufacturer has a duty to warn of danger "beyond that which would be contemplated by the *ordinary user*."

■ By a motion in limine made at the commencement of trial, Starr requested that defendants be prohibited from offering any evidence that it was the duty of some third party to make the die safe. The trial court overruled the motion, and the evidence was thereafter admitted without objection from Starr. Consequently, the error, if any, has not been preserved for review. *Twyford v. Weber*, 220 N.W.2d 919, 924 (Iowa 1974). *See also* Annot., 63 A.L.R.3d 311, 333–34 (1975). *See generally* 9 C. Wright & A. Miller, *supra*, § 2472 at 454–56.

■ Finally, Starr contends that certain deposition testimony was improperly admitted, arguing simply that Rule 32(a)(3)(E) recognizes "the importance of presenting the testimony of witnesses orally in open court." On the other hand, Rule 32(a) permits a deposition to be used in lieu of live testimony under certain conditions. 8 C. Wright & A. Miller, *supra*, § 2146. Rule 32(a)(3)(B) permits the deposition of a witness to be used if the court finds "that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition."

The deposition testimony of Adam Asbach and Siegurd Waldheim shows both were residents of New York when the depositions were taken less than five months before trial. At no time has it been suggested that these witnesses were within 100 miles of the courthouse at the time of trial or that their absence was procured by the party offering the depositions. In admitting the depositions, the trial court implicitly found that the conditions of Rule 32(a)(3)(B) had been satisfied; in so doing, the trial court was entitled to take judicial notice that New York is more than 100 miles from Nebraska. *Hartman v. United States*, 538 F.2d 1336, 1345–46 (8th Cir. 1976); *Ikerd v. Lapworth*, 435 F.2d 197, 205 (7th Cir. 1970).

What has been said about the depositions of Asbach and Waldheim is equally true of the deposition testimony of Richard Eckert, which indicates he lives and works in New York. Starr argues that the court erred in permitting parts of the deposition to be offered on behalf of Hacker, yet other parts of the Eckert deposition were first admitted as part of Starr's case. Rule 32(a)(4) answers this meritless contention: "If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce any other part which ought in fairness to be considered with the part introduced, and any party may introduce any other parts."

Accordingly, the judgment of the district court is affirmed.